## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

COUNTY: (N)  K  S        CIVIL ACTION NUMBER: OSC-04-94 JRS

Civil Case Code ___CDEJ___        Civil Case Type ___declaratory judgment___

(SEE REVERSE SIDE FOR CODE AND TYPE)

| Caption<br><br>Christiana Ventures, Inc. and Joseph Capano<br><br>Plaintiffs,<br><br>v.<br><br>Selective Way Insurance Company a/k/a Selective Insurance Group, Inc.<br><br>Defendant. | NAME AND STATUS OF PARTY FILING DOCUMENT:<br>PLAINTIFF<br>Document Type:(E.G.,COMPLAINT;ANSWER WITH COUNTERCLAIM)<br>COMPLAINT<br>NON-ARBITRATION    X       eFile _____<br>(CERTIFICATE OF VALUE MAY BE REQUIRED)<br><br>Arbitration _____ Mediation_____ Neutral Assessment_____<br>DEFENDANT (CIRCLE ONE) **ACCEPT REJECT**<br>JURY DEMAND  YES_____ No _____<br>TRACK ASSIGNMENT REQUESTED (CIRCLE ONE)<br>**EXPEDITED   STANDARD   COMPLEX** |
| ATTORNEY NAME(S):<br><br>Richard H. Cross, Jr.<br>Amy Evans<br><br>ATTORNEY ID(S):<br><br>3576<br>3829<br><br>FIRM NAME:<br><br>**Cross & Simon, LLC**<br><br>ADDRESS:<br>**913 N. Market Street, 11ᵗʰ floor<br>P.O. Box 1380<br>Wilmington, DE  19899-1380**<br><br>TELEPHONE NUMBER:<br><br>**302-777-4200**<br><br>FAX NUMBER:<br>**302-777-4224**<br><br>E-MAIL ADDRESS:<br><br>rcross@crosslaw.com<br>aevans@crosslaw.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS<br><br>Wellington Homes et al. v. Hartford Cas. Insur. Co. et al. 02C-10-191(JTV)<br><br>EXPLAIN THE RELATIONSHIP(S)<br><br>The relief sought in the above-referenced action is similar to that sought with the complaint herein.  In addition, the above-referenced action and the complaint herein relate to the same underlying facts and concern *State v. Wellington Homes et al*, C.A. No. 99C-0-168 (JTV).<br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED.  THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| CHRISTIANA VENTURES, INC., and JOSEPH CAPANO | ) ) ) | C. A. No. OSC-04-94 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| SELECTIVE WAY INSURANCE COMPANY a/k/a SELECTIVE INSURANCE GROUP INC, | ) ) ) ) | **RECEIVED** MAY 0 3 2005 |
| Defendant. | ) ) | **CORP. CLAIMS** |

<u>**PRAECIPE**</u>

TO:        Prothonotary
           Superior Court
           500 North King Street
           Wilmington, Delaware 19801

PLEASE ISSUE a summons and instruct the Sheriff to serve the summons and

complaint pursuant to 18 *Del. C.* §525 upon Selective Way Insurance Company as follows:

           Selective Way Insurance Company
           c/o Matt Denn, ▓▓▓▓▓▓▓▓▓▓▓▓▓
           841 Silver Lake Boulevard
           Rodney Building
           Dover, DE 19901

Dated: April 11, 2005
           Wilmington, Delaware

CROSS & SIMON, LLC

By: _____
           Richard H. Cross, Jr. (No. 3576)
           Amy Evans (No. 3829)
           913 North Market Street, 11th floor
           P.O. Box 1380
           Wilmington, Delaware 19899-1380
           (302) 777-4200
           (302) 777-4224 (Facsimile)

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

CHRISTIANA VENTURES, INC., and )   C. A. No. O5C-04-94 JRS
JOSEPH CAPANO )
)
Plaintiffs, )
)
v. )
)
SELECTIVE WAY INSURANCE )     **RECEIVED**
COMPANY a/k/a SELECTIVE )       MAY 0 3 2005
INSURANCE GROUP INC, )         **CORP. CLAIMS**
)
Defendant. )

## SUMMONS

**THE STATE OF DELAWARE**
**TO THE SHERIFF OF KENT COUNTY:**
**YOU ARE COMMANDED:**

To summon the above named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon Richard H. Cross, Jr., Esquire and Amy Evans, Esquire, plaintiffs' attorneys, whose address is Cross & Simon, LLC, 913 North Market Street, 11th floor, P.O. Box 1380, Wilmington, Delaware 19899-1380, an answer to the complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

To serve upon defendants a copy hereof and of the complaint (and of the affidavit of demand, if any has been filed by plaintiffs).

Dated: 4/19/05

Sharon D. Agnew
Prothonotary

Per Deputy

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve upon plaintiff's attorneys named above an answer to the complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the complaint (or in the affidavit of demand, if any).

Dated:

Sharon D. Agnew
Prothonotary

Per Deputy



## State of Delaware

MATTHEW DENN
INSURANCE COMMISSIONER

841 SILVER LAKE BLVD.
DOVER, DELAWARE 19904-2465
(302) 739-4251
FACSIMILE (302) 739-5280

### Department of Insurance

APRIL 27, 2005

**RECEIVED**

MAY 0 3 2005

**CORP. CLAIMS**

### VIA CERTIFIED MAIL (70041160000647815923)
### RETURN RECEIPT REQUESTED

MICHELLE SCHUMACHER
SELECTIVE WAY INSURANCE COMPANY
40 WANTAGE AVENUE
BRANCHVILLE, NJ 07890

RE:  CHRISTINANA VENTURES, INC AND JOSEPH CAPANO VS
SELECTIVE WAY INSURANCE COMPANY A/K/A SELECTIVE
INSURANCE GROUP, INC
    SUPERIOR COURT CA NO. 05C-04-94

Dear MR. SCHUMACHER:

Pursuant to 18 Del. C. § 525, the Delaware Insurance Commissioner was
served with the enclosed legal process on APRIL 26, 2005.

**Please do not send your response to the enclosed documentation
to the Delaware Insurance Department.   Instead, you should
respond directly to the person or legal representative identified
in the enclosed legal process.**

Sincerely,

Donna M. Wysopal
Administrative Specialist III
Enclosure
cc: RICHARD CROSS, ESQ.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

CHRISTIANA VENTURES, INC., and )          C. A. No. 05C-04-94 JRS
JOSEPH CAPANO                   )
                               )
        Plaintiffs,             )
                               )
    v.                          )
                               )
SELECTIVE WAY INSURANCE         )
COMPANY a/k/a SELECTIVE         )
INSURANCE GROUP INC,            )
                               )
        Defendant.              )

## COMPLAINT

Plaintiffs, by and through undersigned counsel, allege as follows:

1.    Plaintiff Christiana Ventures, Inc. ("Christiana Ventures") is a Delaware

Corporation.  Plaintiff Joseph Capano is an officer and director of Christiana Ventures

(collectively, the "Plaintiffs").

2.    Upon information and belief, Defendant, Selective Way Insurance

Company is also known as Selective Insurance Group ("Selective").  Selective is licensed

as an insurance company in the State of Delaware.

3.    Selective issued one or more insurance policies, including insurance

policy number S1352759 to White Oak, Inc., under which Christiana Ventures is a named

insured or additional insured (the "Policy").  A copy of insurance policy S1352759 is

attached hereto and incorporated herein.

4.    In September 1999, the Attorney General of the State of Delaware filed a

complaint against, inter alia, Christiana Ventures and Mr. Joseph Capano on behalf of

certain homeowners for property damage to their homes (the "Complaint"). A copy of the Complaint is attached hereto and incorporated herein.

     5.    The Complaint alleges the Plaintiffs therein were negligent or intentional in selling homes which caused property damages.

     6.    The coverage contained in the Policy provides coverage in those sums that the insured becomes legally obligated to pay as damages because of "property damage" to which the insurance applies.

     7.    Under the terms of the Policy, Defendant is obligated to defend any lawsuit brought against Plaintiffs for property damage and to pay on behalf of Plaintiffs any damages awarded against them up to the amount of the property damage liability coverage.

     8.    At all times relevant hereto, Plaintiffs have complied with all policy provisions of the aforementioned Policy provided by Defendant, including all conditions precedent to Defendant's obligation to defend any lawsuit for damages arising against Plaintiffs and to make payment of any damages prayed for against Plaintiffs should they be awarded, up to the amount of the property damage liability coverage.

     9.    Upon demand to provide same, Defendant has declined coverage under the contract of insurance. A copy of the denial letter is attached hereto.

     10.    The denial letter does not comply with the notice provisions of 18 *Del. C.* §3914. That code section provides:

> An insurer shall be required during the pendency of any claim received pursuant to a casualty insurance policy to give prompt and timely written notice to claimant informing claimant of the applicable state statute of limitations regarding action for his/her damages. 18 *Del. C.* §3914

Accordingly, because Defendant did not provide prompt and timely written notice of the statute of limitations, the statute of limitations does not apply. *See*, *Lankford v. Richter*, Del. Supr. 570 A.2d 1148 (1990).

11.    Defendant has wrongfully denied coverage in the underlying action, *State of Delaware v. Wellington Homes, Inc., et al.*, C.A. No. 99C-0-168 (JTV).

12.    Defendant unreasonably and wrongfully refused to defend Plaintiff in the underlying action, *State of Delaware v. Wellington Homes, Inc., et al.*, C.A. No. 99C-0-168 (JTV).

13.    As a result of Defendant's failure to abide by their legal and contractual obligations, Plaintiffs have been forced to retain counsel and incur attorney's fees and will continue to incur attorney's fees in the defense of the underlying action, *State of Delaware v. Wellington Homes, Inc., et al.*, C.A. No. 99C-0-168 (JTV), until its final resolution.

14.    As a further result of Defendant's failure to abide by their legal and contractual obligations, Plaintiffs have incurred expenses and will continue to incur expenses in the defense of the underlying case, *State of Delaware v. Wellington Homes, Inc., et al.*, C.A. No. 99C-0-168 (JTV).

15.    Plaintiffs are entitled to a declaratory judgment pursuant to 10 *Del. C.* §6501, *et seq.* as well as punitive damages for Defendant's bad faith refusal to defend.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court

(1)    declare that Defendant is obligated to defend Plaintiff's in *State of Delaware v. Wellington Homes, Inc., et al.*, C.A. No. 99C-0-168 (JTV);

(2)    declare that Defendant is obligated to reimburse Plaintiff for attorney's fees and expenses incurred to date in defending *State of Delaware v. Wellington Homes, Inc., et al.*, C.A. No. 99C-0-168 (JTV);

(3)    declare that Defendant is obligated to any damages awarded against Plaintiff's in *State of Delaware v. Wellington Homes, Inc., et al.*, C.A. No. 99C-0-168 (JTV) up to the amount of the property damage liability coverage;

(4)    award to Plaintiffs punitive damages;

(5)    award such other and further relief as is just and proper.

Dated: April 11, 2005
Wilmington, Delaware

CROSS & SIMON, LLC

By: _____
    Richard H. Cross, Jr. (No. 3576)
    Amy Evans (No. 3829)
    913 North Market Street, 11th floor
    P.O. Box 1380
    Wilmington, Delaware 19899-1380
    (302) 777-4200
    (302) 777-4224 (Facsimile)

    *Counsel for Christiana Ventures, Inc.
    and Joseph Capano*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY



| | |
|---|---|
| THE STATE OF DELAWARE<br>*ex rel.*, M. JANE BRADY,<br>ATTORNEY GENERAL OF THE<br>STATE OF DELAWARE, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>)<br>) |
| v. | )<br>) |
| WELLINGTON HOMES, INC., a Delaware<br>corporation, WELLINGTON HOMES,<br>L.L.C., a Delaware limited liability<br>corporation, 397 PROPERTIES, L.L.C.,<br>a Delaware limited liability corporation,<br>CHRISTIANA VENTURES, INC., a Delaware<br>corporation, ALBERT A. VIETRI, TINA<br>MARIE VIETRI, JOSEPH L. CAPANO, II,<br>and JOSEPH L. CAPANO, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

C.A. No. 99-

NON-ARBITRATION CASE

JURY OF TWELVE PERSONS
DEMANDED

## COMPLAINT

This civil enforcement action, brought by the State of Delaware against the above named defendants, seeks, *inter alia*, statutory penalties, restitution, investigative costs and attorneys fees under the Consumer Fraud Act and Uniform Deceptive Trade Practices Act. This action arises out of an investigation by the Consumer Protection Unit of the Attorney General's Office that revealed that the above named defendants engaged in unfair and deceptive practices in connection with the advertising and sale of new homes. This action is not subject to compulsory arbitration because the plaintiff is seeking, in part, statutory penalties. Superior Court Civil Rule 16.1(a). Upon personal knowledge of the Attorney General's investigators, information and belief, the State of Delaware alleges the following:

## I. The Parties

1.    Plaintiff State of Delaware, *ex rel.*, Attorney General M. Jane Brady, brings this action through the Delaware Department of Justice.

2.    Defendant Wellington Homes, Inc., is a Delaware corporation, with its principal place of business at 1601 Concord Pike, Suite 27, Wilmington, Delaware. The registered agent for Wellington Homes, Inc., is Joseph L. Capano, II.

3.    Defendant Wellington Homes, L.L.C., is a Delaware limited liability corporation, with its principal place of business at 1601 Concord Pike, Suite 27, Wilmington, Delaware. Wellington Homes, L.L.C., serves as its own registered agent.

4.    Defendant 397 Properties, L.L.C., ("397 Properties"), is a Delaware limited liability corporation, with its principal place of business at 1601 Concord Pike, Suite 27, Wilmington, Delaware. 397 Properties serves as its own registered agent.

5.    Defendant Christiana Ventures, Inc., ("Christiana Ventures"), is a Delaware corporation, with its principal place of business at 100 Bentley Lane, Shanlyn, Centerville, Delaware. Christiana Ventures serves as its own registered agent.

6.    Defendant Albert A. Vietri, ("Albert Vietri"), is an individual, and the father of defendant Tina Marie Vietri, residing at 1012 Yorklyn Road, Hockessin, Delaware. Albert Vietri was, at all times relevant hereto, an owner, manager, officer and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., and Wellington Homes, L.L.C.

7.    Defendant Tina Marie Vietri, ("Tina Vietri"), is an individual, and the daughter of defendant Albert Vietri, residing at 1012 Yorklyn Road, Hockessin, Delaware. Tina

2

Vietri was, at all times relevant hereto, an owner, manager, officer and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., and Wellington Homes, L.L.C.

        8.      Defendant Joseph L. Capano, II, ("Joseph Capano, II"), is an individual, and is the son of defendant Joseph L. Capano, residing at 300 Bartrum Lane, Hockessin, Delaware. Joseph Capano, II, was, at all times relevant hereto, an owner, manager, officer and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., and Wellington Homes, L.L.C.

        9.      Defendant Joseph L. Capano, ("Joseph Capano"), is an individual, and is the father of defendant Joseph L. Capano, II, residing at 436 Bohemia Mill, Middletown, Delaware 19709. Joseph Capano was, at times relevant hereto, a manager and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., Wellington Homes, L.L.C., and Christiana Ventures, as well as a related corporation known as Bass Properties, Inc., described below.

        10.     At all times relevant hereto, defendants Wellington Homes, Inc., Wellington Homes, L.L.C., and 397 Properties, were several corporate entities used by the individual defendants, to develop, construct, advertise and sell single family homes, beginning from on or about January 1, 1996, and continuing through the present (hereinafter the "relevant period").

## II. Jurisdiction and Venue

        11.     The State brings this action pursuant to the Consumer Fraud Act, codified at 6 *Del. C.* § 2511, *et seq.*, and pursuant to the Uniform Deceptive Trade Practices Act ("UDTPA"), codified at 6 *Del. C.* § 2531, *et seq.* This action is not subject to compulsory arbitration because the

3

State is seeking, in part, to enforce a statutory penalty. Superior Court Civil Rule 16.1(a).

12.     Venue for this action is statewide, in that the defendants sold and advertised homes to consumers throughout the State of Delaware. In addition, a number of the unlawful acts, as more fully described below, occurred in New Castle County.

### III. Facts

13.     On or about March 14, 1988, Bass Properties acquired the tract of land in Middletown, Delaware, that later became "Lea Eara Farms," (more fully described below), from Earl and Alice Shoats for the sum of SEVEN HUNDRED SEVENTY-EIGHT THOUSAND FIVE HUNDRED DOLLARS ($778, 500).

14.     Lea Eara Farms is now a residential development located in Middletown, Delaware, south of the Chesapeake and Delaware Canal. It was built in four phases by a network of corporations primarily managed or controlled by the four individual defendants, Joseph Capano, Joseph Capano, II, Albert Vietri and Tina Vietri (collectively "Individual Defendants.") The network of corporations used by the Individual Defendants includes, but is not limited to, defendants Wellington Homes, Inc., Wellington Homes, LLC, 397 Properties and Christiana Ventures, (collectively "Corporate Defendants"), as well as Delaware corporations and/or predecessor corporations of Corporate Defendants, Bass Properties, Inc., White Oak Builders, Inc., and White Oak Homes, Inc. (Individual Defendants and Corporate Defendants are hereafter collectively referred to as "Defendants").

15.     Between October 22, 1990, and February 22, 1995, Joseph Capano and Bass Properties undertook various steps to plan and develop Lea Eara Farms, said development being more fully shown and described as Phase III of the Major Record Subdivision Plan of Lea Eara

4

Farms, as filed and recorded in the Office of the Recorder of Deeds in and for New Castle County, Delaware, in Microfilm Record No. 11181, and is hereby incorporated by reference, as if fully set forth herein.

      16.    Construction of Lea Eara Farms, Phase III, including its development, design, and construction, was fully initiated and under way by January of 1996. All phases of construction were overseen and actively implemented by Defendants, initially through a corporate entity known as White Oak Builders, Inc., trading as "White Oak." During the course of the construction, advertising and sale of Lea Eara Farms, Defendants began phasing out White Oak, and phasing in Wellington Homes, Inc., and Wellington Homes, L.L.C., (collectively "Wellington Homes") as the Defendants' builder at Lea Eara Farms.

      17.    At all times relevant hereto, defendants used 397 Properties as the vehicle for transfer of title out of their corporate network described above, and into the names of consumer purchasers at Lea Eara Farms. In addition, defendants also used 397 Properties as a marketing entity, which marketed, promoted and advertised the aforesaid properties to consumers.

      18.    At all times relevant hereto, defendants used Wellington Homes as the builder of homes in Lea Eara Farms, through their corporate network, and collectively marketed and sold Lea Eara Farms properties through their corporate network under the name "Wellington Homes."

      19.    At all times relevant hereto, defendants used Christiana Ventures as the vehicle for transfer of title out of their corporate network described above, and into the name of 397 Properties, prior to the transfer of title from 397 Properties to consumer purchasers at Lea Eara Farms. In limited instances, defendants also used Christiana Ventures as the vehicle for transfer of title out of their corporate network described above, and to consumer purchasers at Lea Eara Farms.

20.    At all times relevant hereto, Bass Properties, Inc., ("Bass Properties"), acquired the land and held title to the property that ultimately became the subdivision of Lea Eara Farms. In most instances relevant hereto, Bass Properties transferred the subdivided lots to Christiana Ventures, before Christiana Ventures transferred the same to 397 Properties. In limited instances, Bass Properties directly transferred subdivided lots to 397 Properties, which in turn, were transferred to consumer purchasers.

21.    White Oak Builders, Inc. and White Oak Homes, Inc. (collectively, "White Oak") were predecessor builders at Lea Eara Farms, prior to Wellington Homes. At all times relevant hereto, White Oak was controlled and managed by one or more of the same individuals who controlled and managed Wellington Homes. Upon information and belief, Wellington Homes is the successor-in-interest to White Oak, and utilized employees and facilities common to Wellington Homes and 397 Properties.

22.    At all times relevant hereto, the Individual Defendants actively participated in, controlled and managed the building, advertising and sale of homes at Lea Eara Farms, individually, and through one or more of the Corporate Defendants and their agents, and actively participated in the day-to-day affairs of the aforesaid development, construction, advertising and sale of homes at Lea Eara Farms.

23.    At or about the same time defendants began phasing in Wellington Homes in place of White Oak, defendants also retained the services of Stoltz Realty ("Stoltz"), as their agent, to market and sell the Phase III lots at Lea Eara Farms to consumers.

24.    At all times relevant hereto, and more particularly, in connection with defendants' aforesaid marketing and sale of Phase III lots to the public, defendants, directly and

6

through their agents and employees, used a single page list of "Standard Features" to advertise and promote the homes they were building at Lea Eara Farms. Among other things, the "Standard Features" list offered by defendants to prospective purchasers represented, *inter alia*, the following items were standard features in homes built at Lea Eara Farms by Defendants:

"Dramatic 2-Story Open Foyer,"
"Nine (9) Foot Ceilings,"
"2 Car Side Entry Garage,"
"Five (5) Ton High Efficiency Air Conditioner,"
"Cultured Marble Vanity Tops,"
"Yorketown Maple Kitchen Cabinets,"
"Luxurious Master Suites with Separate Shower with Glass Doors, "
"Energy Efficient Insulation,"
and "Front Door Brass Package."

25.    By the end of 1996, Defendants completed construction of a sample home or "Model Home," which was built on Lot #1 of the Lea Eara Farms development, and began using the Model Home directly, and through their agents and employees, as a sales tool, in connection with their sales, promotion and advertising of their homes to prospective purchasers.

26.    Among other things, Defendants represented to prospective purchasers that the homes they were building and selling at Lea Eara Farms would include all the standard features in the Model Home.

27.    Beginning in or about May of 1997, Defendants began to affix labels and signs upon certain features and "extras" in the Model Home, which for the first time identified them as "options" available to prospective purchasers at an additional cost.

28.    At all times relevant hereto, and more particularly, in connection with defendants' aforesaid marketing and sale of Phase III lots to the public, defendants, directly and through their agents and employees, used preprinted brochures as a sales tool, in connection with

7

their sales, promotion and advertising of their homes to prospective purchasers. Among other things, defendants' preprinted sales brochures repeatedly represented that homes built by Wellington Homes were of "Outstanding Quality."

29.     As a direct result of defendants' aforesaid promotions and advertisements, multiple consumer purchasers entered into contracts for the construction and purchase of new homes at Lea Eara Farms with one or more Defendants.  Such consumers included, but are not limited to, at least the following individuals and properties, during the relevant period:

A.     Louise and Jesse Giambrone at 307 Jessica Drive, Middletown, Delaware;

B.     Pamela and Samuel Sellers at 201 West Union Drive, Middletown, Delaware;

C.     Theresa and Ronald Debbrecht and Edward and Patricia O'Neill at 204 West Union Drive, Middletown, Delaware;

D.     Barbara and James Stephens at 200 West Union Drive, Middletown, Delaware;

E.     Clifford and Raye Goldsborough at 110 East Cedarwood Drive, Middletown, Delaware;

F.     Lawrence and Michele Gillen at 112 East Cedarwood Drive, Middletown, Delaware;

G.     Karl and Audrey Kenney at 101 Dawn Drive, Middletown, Delaware.

30.     At times relevant hereto, purchasers and prospective purchasers of homes at Lea Eara Farms, including one or more of the consumers identified in paragraph 29, above, were told that the "Standard Features" promoted and advertised by defendants, as more fully described in paragraph 24, above, would be standard features included in their own homes.

31.     At all times relevant hereto, purchasers and prospective purchasers of homes at Lea Eara Farms, including one or more of the consumers identified in paragraph 29, above, were

8

told that the representations made by defendants in their sales brochures, including their representations of "Outstanding Quality," as more fully described in paragraph 28, above, would be consistent with qualities and features included in their own homes.

32.    At all times relevant hereto, purchasers and prospective purchasers of homes at Lea Eara Farms, including one or more of the consumers listed in paragraph 29, above, were told that the "features" and "extras," displayed by defendants in their Model Home would be "features" and "extras" included in their own homes.

33.    At times relevant hereto, defendants actively prohibited and prevented purchasers or prospective purchasers of homes at Lea Eara Farms, from visiting or observing the construction of their homes, notwithstanding consumer requests to do the same.

34.    Upon completion and sale of the homes in Lea Eara Farms, numerous material defects and deviations from the plans, sales brochures and/or the Model Home, were discovered.

35.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and deviations from the plans, sales brochures and/or the Model Home, Defendants failed and refused to make reasonable bona fide efforts to correct and conform the same.

36.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and deviations from the plans, sales brochures and/or the Model Home, Defendants falsely represented such items were not part of Defendants' obligations to their consumer purchasers, and thus were not subject to correction or repair.

37.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and/or deviations from the plans, sales brochures and/or the

9

Model Home, Defendants represented to their consumer purchasers, that Defendants were permitted to substitute materials.

38.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and/or deviations from the plans, sales brochures and/or the model home, Defendants falsely represented that they were unable to gain access to their purchasers' premises to correct or conform the same.

## IV.  VIOLATIONS

## COUNT ONE

## (Consumer Fraud - Misleading Model Home)

39.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 38, inclusive, as if they were fully set forth herein.

40.    At all times relevant hereto, Defendants, directly and through their agents and employees, led purchasers of homes in Lea Eara Farms to believe that the homes they had purchased would conform to the Model Home displayed by Defendants, when in fact, such homes substantially and materially deviated from the Model Home.

41.    Such substantial and material deviations included, but are not limited to, at least the following:

| (A) | Doors | (1) | Missing deadbolt door locks; |
| | | (2) | No door in some door frames; |
| | | (3) | Inferior sliding glass doors and/or door handles; |
| | | (4) | No doorbells; |
| (B) | Stairs | (1) | Narrower and more enclosed stairs; |
| | | (2) | No "bull-nose" or wrap-around bottom step; |
| (C) | Sinks | (1) | Sterling plastic faucets, not Moen chrome metal faucets; |

10

|       |           | (2)  | No cultured marble vanity tops; |
|-------|-----------|------|-------------------------------|
| (D)   | Bathrooms | (1)  | No elongated toilets; |
|       |           | (2)  | Sterling toilets instead of Kohler toilets; |
|       |           | (3)  | No shower doors; |
|       |           | (4)  | Pieced shower units instead of one-piece units; |
|       |           | (5)  | No seats in shower stalls; |
|       |           | (6)  | No decorative etching in shower stalls; |
|       |           | (7)  | Smaller bathroom sinks; |
|       |           | (8)  | Inferior wood or wood lamination in bathroom cabinets; |
| (E)   | Kitchens  | (1)  | Inferior wood or wood lamination in kitchen cabinets; |
|       |           | (2)  | Smaller kitchen shelves and cabinets; |
|       |           | (3)  | Smaller kitchen pantries; |
|       |           | (4)  | Smaller kitchen sinks; |
|       |           | (5)  | No water lines for ice makers; |
| (F)   | Other     | (2)  | Smaller air conditioning units; |
|       |           | (3)  | Smaller circuit breaker boxes; |
|       |           | (4)  | Smaller skylights; |
|       |           | (5)  | Unfinished garages; |
|       |           | (6)  | Smaller hot water heaters; |
|       |           | (7)  | No furnace shut-off switches at top of basement stairs; |
|       |           | (8)  | Larger gaps between floor joists; |
|       |           | (9)  | No bridging between floor joists; |
|       |           | (28) | No full tilt windows; |
|       |           | (30) | Inferior ceiling fans; |
|       |           | (31) | Inferior light fixtures; |
|       |           | (32) | No wooden kick-plates in cabinet bases; |
|       |           | (33) | No attic light switches in closet; |
|       |           | (34) | No truss rafters in attic; and |
|       |           | (35) | No fiberglass insulation. |

42.    Defendants' aforesaid presentation of the Model Home to consumers as a representation of the home they would build, and their subsequent failure to provide the same, was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

43.    Defendants' aforesaid conduct was willful in that they knew or should have

known such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT TWO

### (UDTPA - Misleading Model Home - Goods Not of a Particular Style or Model)

44.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 - 43, inclusive, as if they were fully set forth herein.

45.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led purchasers of homes in Lea Eara Farms to believe that the home they had purchased would be of the particular style or model as the Model Home they were shown, when in fact, such homes substantially and materially deviated from the Model Home.

46.    Such substantial and material deviations included, but are not limited to, all those substantial and material deviations set forth in paragraph 41, above.

47.    Defendants' presentation of their Model Home to consumers as a representation of the homes they would build, and their subsequent delivery of homes which substantially and materially deviated from the Model Home, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

48.    At all relevant times relevant hereto, Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT THREE

### (Deceptive Trade Practice - Model Home Was Likely to Confuse or Mislead)

49.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

12

1 - 48, inclusive, as if they were fully set forth herein.

50.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that the home they had purchased would be of the particular style or model as the Model Home they were shown, when in fact, the homes that were delivered substantially and materially deviated from the Model Home.

51.    Such substantial and material deviations included, but are not limited to, all those substantial and material deviations as set forth in paragraph 41, above.

52.    Defendants' aforesaid conduct was a deceptive trade practice in violation of 6 *Del. C.* §2532(12), in that it created a likelihood of confusion or misunderstanding, in that one or more purchasers could be or were led to believe, that the homes they had bought would conform to the Model Home they were shown.

53.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT FOUR

### (Consumer Fraud - Misleading Lists and Sales Brochure)

54.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 - 53, inclusive, as if they were fully set forth herein.

55.    At all times relevant hereto, Defendants directly and through their agents and employees,  led purchasers of homes in Lea Eara Farms to believe that their homes would contain all of the "Standard Features" listed in Defendants' sales brochures, when in fact, their homes did not contain all such "Standard Features."

13

56.     Such "Standard Features" as promised to consumers in Defendants' lists and sales brochures, include those items set forth in paragraph 24 above, and also include, but are not limited to, the following:

      (1) five-ton air conditioner,
      (2) two-story open foyer,
      (3) nine-foot ceilings,
      (4) glass doors on master suite showers,
      (5) ceiling fans, and/or
      (6) full tilt windows.

57.     Defendants' presentation of such lists and sales brochure to consumers as a representation of the homes they would build, and the "Standard Features" they would contain, and their subsequent failure to provide the same, was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

58.     Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT FIVE

### (UDTPA - Goods Not of a Particular Style or Model as per Lists and Sales Brochures)

59.     Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 58 inclusive, as if they were fully set forth herein.

60.     At all times relevant hereto, Defendants directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes would contain all of the "Standard Features" listed in the sales brochures and lists they were shown by Defendants, when in fact, their homes did not contain all such "Standard Features."

14

61.    Such "Standard Features" as promised to consumers in Defendants' lists and sales brochures include those items set forth in paragraph 24, above, as well as those items set forth in paragraph 56, above.

62.    Defendants' presentation of the aforesaid sales brochures and lists to consumers as a representation of the "Standard Features" in the homes they would build, and their subsequent failure to deliver all such "Standard Features" to consumer purchasers, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

63.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532 (7).

### COUNT SIX

### (UDTPA - Sales Brochures and Lists Likely To Confuse Or Mislead)

64.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 63, inclusive, as if they were fully set forth herein.

65.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their home would contain all of the "Standard Features" listed in Defendants' sales brochures and lists, when in fact their home did not contain all such "Standard Features."

66.    Such "Standard Features" as promised to consumers in Defendants' sales brochures and lists include, but are not limited to, those items listed in paragraphs 24 and 56, above.

67.    Defendants' aforesaid conduct was a deceptive trade practice in violation of 6 *Del. C.* §2532(12), in that it created a likelihood of confusion or misunderstanding, in that one or

15

more purchasers could be or were led to believe, that the homes they had purchased from Defendants would contain all of the "Standard Features" promised by Defendants' in their sales brochures and lists.

68.    Defendants' conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT SEVEN

### (Consumer Fraud – Deviation From Approved Plans.)

69.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 68, inclusive, as if they were fully set forth herein.

70.    At all times relevant hereto, Defendants directly and through their agents and employees, filed or caused to be filed, with certain government authorities, including with the New Castle County Department of Land Use, certain plans, drawings and specifications, (the "Plans") for the development of Lea Eara Farms. Such Plans, as approved by such government authorities, provided notice to the world, including notice to consumers, of the nature and type of development Defendants were building, and more particularly, notice of the type of homes Defendants were building at Lea Eara Farms.

71.    Absent any notice to or approval from consumers or the proper government authorities, Defendants substantially and materially deviated from the aforesaid Plans, and failed to provide homes to consumers which conformed to the Plans as were submitted to government authorities, including the New Castle County Department of Land Use.

72.    Defendants' said failure to so inform consumer purchasers of such deviations, and their subsequent delivery of homes which substantially and materially deviated from the Plans

16

as submitted to government authorities for approval, was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

73.     Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT EIGHT

### (UDTPA-Goods Not of a Particular Style or Model Due to Deviation from Approved Plans)

74.     Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 73, inclusive, as if they were fully set forth herein.

75.     At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, failed to disclose to one or more purchasers of homes in Lea Eara Farms that their home did not conform to the Plans for that type of home that were submitted to government authorities, including to the New Castle County Department of Land Use for approval.

76.     Defendants' aforesaid failure to inform consumer purchasers of such deviations, and/or their subsequent delivery of homes which substantially and materially deviated from the aforesaid Plans, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

77.     Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT NINE

### (UDTPA - Plan Deviations Likely to Confuse or Mislead)

78.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 77, inclusive, as if they were fully set forth herein.

79.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, failed to disclose to one or more purchasers of homes in Lea Eara Farms that their home did not conform to the Plans Defendants submitted to the governmental authorities, including to the New Castle County Department of Land Use, for approval.

80.    Defendants' aforesaid conduct was a deceptive trade practice in violation of 6 *Del. C.* §2532(12), in that it created a likelihood of confusion or misunderstanding from said failure to inform purchasers of Defendants' deviations from the aforesaid Plans, and/or Defendants' subsequent delivery of homes that substantially and materially deviated from the Plans.

81.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT TEN

### (Consumer Fraud - County Code Violations.)

82.    Plaintiff hereby repeats and realleges the allegations set forth in paragraph 1 through 81, inclusive, as if they were fully set forth herein.

83.    At times relevant hereto, Defendants directly and through their agents and employees, caused the building and construction of the homes in Lea Eara Farms to substantially and materially deviate from the requirements of the New Castle County Building Code (the BOCA National Building Code/1990, as amended)(hereafter "NCC Building Code").

84.    Defendants' subsequent sale and delivery of homes to one or more consumer purchasers which did not comply with the NCC Building Code, and/or their failure to inform consumer purchasers of such substantial and material deviation from the requirements of the NCC

18

Building Code, was deceptive, false and misleading, and constituted an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

85.    Defendants' sale of the aforesaid homes to consumer purchasers which substantially and materially deviated from the requirements of the NCC Building Code, constitutes a *per se* violation of 6 *Del. C.* §2513(a).

86.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT ELEVEN

### (UDTPA - Goods Not of a Particular Style or Model due to County Code Violations)

87.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 86 inclusive, as if they were fully set forth herein.

88.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, sold homes to one or more consumer purchasers which had substantial and material deviations from the requirements of the NCC Building Code.

89.    Defendants' aforesaid sale of homes which substantially and materially deviated from the requirements of the NCC Building Code, and/or their failure to inform consumer purchasers of such deviations, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

90.    Defendants' aforesaid sale of homes to consumer purchasers which substantially and materially deviated from the requirements of the NCC Building Code, was a *per se* deceptive trade practice in violation of 6 *Del. C.* §2532(7).

91.    Defendants' conduct was willful in that they knew or should have known that

19

such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT TWELVE

### (UDTPA - County Code Violations Likely To Confuse Or Mislead)

92.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 91, inclusive, as if they were fully set forth herein.

93.    At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, sold homes to one or more consumer purchasers in Lea Eara Farms which substantially and materially deviated from the requirements of the NCC Building Code.

94.    Defendants' aforesaid conduct created a likelihood of confusion or misunderstanding, in that said sale of homes to consumer purchasers led such consumer purchasers to believe their homes had been constructed in compliance with all applicable laws and regulations, including the NCC Building Code, and  was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

95.    Defendants' aforesaid sale of homes to consumer purchasers which substantially and materially deviated from the requirements of the NCC Building Code, was a *per se* deceptive trade practice in violation of 6 *Del. C.* §2532(12).

96.    Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT THIRTEEN

### (Consumer Fraud - Defective Products)

97.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

20

1 through 96, inclusive, as if they were fully set forth herein.

      98.   At all times relevant hereto, Defendants, directly and through their agents and employees, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their homes would be of "Outstanding Quality," when in fact, their homes were defective in several material respects, including, but not limited to: (1) Warped and/or bulging walls; (2) Excessive cracks in the foundation; (3) Water leakage, and/or; (4) Structurally unsound or unstable areas within the homes.

      99.   Defendants' representation of the homes as being of "Outstanding Quality" and their subsequent delivery of materially defective homes was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

      100.   Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT FOURTEEN

### (UDTPA - Goods Not of a Particular Style or Model due to Defects)

      101.   Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 100 inclusive, as if they were fully set forth herein.

      102.   At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact, their homes were defective in several material respects.

      103.   Such material defects found in the homes of consumer purchasers included, but were not limited to, the defects set forth in paragraph 98, above.

21

104.    Defendants' representations that their homes were of "Outstanding Quality" and their subsequent delivery of homes that were materially defective was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

105.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT FIFTEEN

### (UDTPA – Defective Product Likely to Confuse or Mislead)

106.    Plaintiff hereby repeats and realleges the above-stated allegations in paragraphs 1 through 105, inclusive, as if they were fully set forth herein.

107.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact, their homes were defective in several material respects.

108.    Such defective aspects of these homes included, but were not limited to, the defects set forth in paragraph 98, above.

109.    Defendants' aforesaid conduct created a likelihood of confusion or misunderstanding, in that one or more consumer purchasers could be or were led to believe that the homes they had bought were of "Outstanding Quality" when in fact, such homes were materially defective, and Defendants' conduct was therefore was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

110.    Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT SIXTEEN

### (Consumer Fraud--Defective Materials)

111.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 110, inclusive, as if they were fully set forth herein.

112.    At all times relevant hereto, Defendants, directly and through their agents and employees, led one or more purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact, Defendants used or caused to be used, defective and substandard materials in the construction of homes in Lea Eara Farms.

113.    Such defective and substandard materials included, but were not limited to: (1) Watered-down concrete foundation walls; (2) Green lumber and inferior lumber in floor joists, framing and interiors, and/or; (3) Rafters that were cut too short for their purpose.

114.    Defendants' representation of these homes to consumer purchasers as homes of "Outstanding Quality" and their subsequent delivery of homes that were constructed with defective and substandard materials was deceptive, false and misleading, and constitutes an unlawful practice in violation of 6 *Del. C.* §2513(a).

115.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT SEVENTEEN

### (UDTPA - Goods Not of a Particular Style or Model due to Defective Materials)

116.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 115, inclusive, as if they were fully set forth herein.

117.    At all times relevant hereto, Defendants, directly and through their agents and

23

employees, and in the course of their business, vocation, or occupation, led one or more purchasers

of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact

Defendants used, or caused to be used, defective and substandard materials in the construction of

homes in Lea Eara Farms.

118.    Such defective and substandard materials included, but were not limited to,

the defective and substandard materials set forth in paragraph 113, above.

119.    Defendants' representation of these homes as being of "Outstanding Quality"

to consumer purchasers and their subsequent delivery of homes that were constructed with defective

and substandard materials  was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

120.    Defendants' aforesaid conduct was willful in that they knew or should have

known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

### COUNT EIGHTEEN

### (UDTPA - Defective Materials Likely To Confuse or Mislead)

121.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

1 through 120 inclusive, as if they were fully set forth herein.

122.    At all times relevant hereto, Defendants, directly and through their agents and

employees, and in the course of their business, vocation or occupation, led one or more purchasers

of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact

defective and substandard materials were used in the construction of their homes.

123.    Such defective and substandard materials included, but were not limited to,

the defective and substandard materials set forth in paragraph 113, above.

124.    Defendants' aforesaid conduct created a likelihood of confusion or of

24

misunderstanding, in that consumer purchasers could be or were led to believe that their homes were

of "Outstanding Quality" when in fact, such homes were constructed with defective and substandard

materials, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

       125.   Defendants' aforesaid conduct was willful in that they knew or should have

known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT NINETEEN

### (Consumer Fraud--Substandard Construction)

       126.   Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

1 through 125, inclusive, as if they were fully set forth herein.

       127.   At all times relevant hereto, Defendants, directly and through their agents and

employees, led one or more consumer purchasers to believe that their homes were of "Outstanding

Quality" when in fact substandard and improper construction practices were used in the construction

of their homes.

       128.   Such substandard and improper construction practices included, but were not

limited to:

      (1)   Installing insulation and drywall before installing the siding;
      (2)   Failing to properly attach the siding;
      (3)   Nailing the roofing shingles in the wrong location;
      (4)   Failing to properly attach the roof to the rafters;
      (5)   Failing to compact the soil before pouring the concrete for the front stoop;
      (6)   Allowing lumber to lie outside in the natural elements prior to its use;
      (7)   Failing to provide supports for certain water, sewer, electric, and/or cable
           lines;
      (8)   Improper installation of air ducts and vents;
      (9)   Improper routing of water, sewer, electric, cable and air conditioning lines;
      (10)  Failing to properly insulate certain rooms or areas;
      (11)  Improperly supporting cantilevered projections; and/or
      (12)  Improper grading of terrain.

129.    Defendants' representation to purchasers that their homes were of "Outstanding Quality" and their subsequent delivery of homes that were constructed with improper and substandard construction practices was deceptive, false and misleading, and constitutes an unlawful practice in violation of 6 *Del. C.* §2513(a).

130.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

### COUNT TWENTY

### (UDTPA - Goods Not of a Particular Style or Model due to Substandard Construction)

131.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 130, inclusive, as if they were fully set forth herein.

132.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact improper and substandard construction practices were used in the construction of their homes.

133.    Such improper and substandard construction practices included, but were not limited to, the improper and substandard construction practices set forth in paragraph 128, above.

134.    Defendants' representation to purchasers of their homes as of "Outstanding Quality" and their subsequent delivery of homes that were constructed with improper and substandard construction practices was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

135.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

### COUNT TWENTY-ONE

26

### (UDTPA - Substandard Construction Likely to Confuse or Mislead)

136.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 135, inclusive, as if they were fully set forth herein.

137.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact improper and substandard construction practices were used in the construction of their homes.

138.    Such improper and substandard construction practices included, but were not limited to, the improper and substandard construction practices stated in paragraph 128, above.

139.    Defendants' above conduct created a likelihood of confusion or of misunderstanding, in that one or more purchasers could be or were led to believe that their homes were of "Outstanding Quality" when in fact they were constructed with improper and substandard construction practices, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

140.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

### COUNT TWENTY-TWO

### (Consumer Fraud--Oral Misrepresentations or False Promises.)

141.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 140 inclusive, as if they were fully set forth herein.

142.    At all times relevant hereto, Defendants directly and through their agents and employees, made oral misrepresentations and/or false promises to one or more consumer purchasers

of homes in Lea Eara Farms. Such oral misrepresentations or false promises included, but were not limited to promises of:

> (1) Installation of upgraded carpet,
> (2) Upgraded cabinets,
> (3) Upgraded electrical wiring and fixtures,
> (4) Installation of sidewalks,
> (5) Landscaping,
> (6) Maintenance of sod,
> (7) Regrading of improperly graded terrain,
> (8) Installation of a cathedral ceiling, and/or
> (9) Installation of handles and knobs for cabinets.

143.    Defendants' oral misrepresentations or false promises were deceptive, false and misleading, and constitute an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

144.    At all times relevant hereto, Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT TWENTY-THREE

### (UDTPA-Goods Not of A Particular Style or Model-Oral Misrepresentations/False Promises)

145.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 144, inclusive, as if they were fully set forth herein.

146.    At all times relevant hereto, Defendants, directly and through their agents, and in the course of their business, vocation, or occupation, made oral misrepresentations or false promises to one or more consumer purchasers of homes in Lea Eara Farms. Such oral misrepresentations or false promises included, but were not limited to, the oral misrepresentations or false promises set forth in paragraph 142, above.

147.    Defendants aforesaid oral misrepresentations or false promises, and/or their delivery of homes which substantially and materially deviated from such oral misrepresentations or

28

false promises, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

148.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT TWENTY-FOUR

### (UDTPA - Oral Misrepresentations and False Promises Likely to Confuse or Mislead)

149.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 148, inclusive, as if they were fully set forth herein

150.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more purchasers of homes in Lea Eara Farms to believe certain oral misrepresentations or false promises.

151.    Such oral misrepresentations or false promises included, but were not limited to, the oral misrepresentations or false promises set forth in paragraph 142, above.

152.    Defendants' aforesaid conduct created a likelihood of confusion or of misunderstanding in that one or more purchasers could be or were led to believe such oral misrepresentations or false promises, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

153.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT TWENTY-FIVE

### (Consumer Fraud-Deviations from Plans or Drawings

154.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 153, inclusive, as if they were fully set forth herein.

29

155.    At all times relevant hereto, the Defendants, directly and through their agents and employees, led one or more purchasers of homes in Lea Eara Farms to believe that their home would conform to the plans or drawings they were shown by the Defendants, or plans or drawings they had agreed to with Defendants, when in fact, the homes that were delivered substantially and materially deviated from such plans or drawings.

156.    Defendants' representation of the homes to consumer purchasers as conforming to such plans or drawings and their subsequent failure to provide what they promised, was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

157.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by  6 *Del. C.* §2513(a).

## COUNT TWENTY-SIX

### (UDTPA - Goods Not of Particular Style or Model - Deviations from Plans or Drawings)

158.    Plaintiff hereby repeats and realleges the above-stated allegations in paragraphs 1 through 157, inclusive, as if they were fully set forth herein.

159.    At all times relevant hereto, Defendants, directly and through their agents, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes conformed to the plans or drawings they had been shown by Defendants, or plans or drawings they had agreed to with Defendants, when in fact, the homes that were delivered substantially and materially deviated from such plans or drawings.

160.    Defendants aforesaid representation of the homes to purchasers as conforming to such plans or drawings and their subsequent delivery of homes which substantially

30

and materially deviated from such plans or drawings was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

161.     Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT TWENTY-SEVEN

### (UDTPA - Deviations from Plans or Drawings Likely to Confuse or Mislead)

162.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 161, inclusive, as if they were fully set forth herein.

163.     At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their home conformed to the plans or drawings they had been shown by the Defendants, or to the plans or drawings they had agreed to with Defendants, when in fact the homes that were delivered substantially and materially deviated from such plans or drawings.

164.     Defendants' aforesaid conduct created a likelihood of confusion or of misunderstanding, in that one or more purchasers could be or were led to believe, that the homes they had bought would conform to such plans or drawings, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

165.     Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT TWENTY-EIGHT

### Consumer Fraud: Price Gouging

31

166.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 165, inclusive, as if they were fully set forth herein.

167.    At all times relevant hereto, the Defendants, directly and through their agents and employees, represented to one or more purchasers of homes in Lea Eara Farms that the final price of their homes was fixed and included a number of standard features, when in fact, Defendants charged consumer purchasers additional monies for items that were standard or were represented as standard by the Defendants.

168.    Such items that were standard or were represented as standard by Defendants include, but are not limited to: (1) White cabinets; (2) Side-entry garage; (3) Nine foot ceilings; and/or (4) A master bedroom sitting room.

169.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT TWENTY-NINE

### (UDTPA - Goods Not of a Particular Style or Model due to Price Gouging)

170.    Plaintiff hereby repeats and realleges the above-stated allegations in paragraphs 1 through 169, inclusive, as if they were fully set forth herein.

171.    At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, represented to one or more purchasers of homes in Lea Eara Farms to that the final price of their homes was fixed and included a number of standard features, when in fact, Defendants charged consumer purchasers additional monies for items that were standard or were represented as standard by the Defendants.

172.    Such items that were standard or were represented as standard included, but

32

are not limited to, those items listed in paragraph 168, above.

173.    Defendants aforesaid representation of the homes to purchasers as including certain standard features and their subsequent assessments of undisclosed charges upon consumer purchasers was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

174.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 Del. C. §2532(7).

## COUNT THIRTY

### (UDTPA - Price Gouging Likely to Confuse or Mislead)

175.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 174, inclusive, as if they were fully set forth herein.

176.    At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, represented to one or more purchasers of homes in Lea Eara Farms to that the final price of their homes was fixed and included a number of standard features, when in fact, Defendants charged consumer purchasers additional monies for items that were standard or were represented as standard by the Defendants.

177.    Such items that were standard or were represented as standard included, but are not limited to, those items listed in paragraph 168, above.

178.    Defendants' aforesaid conduct created a likelihood of confusion or of misunderstanding, in that one or more purchasers could be or were led to believe, that the homes they had bought included certain standard features for a predetermined price, when it did not, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

179.    Defendants' aforesaid conduct was willful in that they knew or should have

33

known such conduct was of the nature prohibited by 6 Del. C. §2532(12).

## V. RELIEF

**WHEREFORE,** the State requests that This Court grant the following relief:

A.    Enter judgment in favor of the State of Delaware and as against each Defendant, jointly and severally, on each count of the complaint;

B.    Order each Defendant to separately pay a civil penalty in an amount of up to $10,000 for each violation of 6 Del. C. §2513;

C.    Order each Defendant to separately pay a civil penalty in an amount of up to $10,000 for each violation of 6 Del. C. §2532;

D.    Order all Defendants to pay restitution and/or damages to all affected consumer victims for each and every violation of 6 Del. C. §2513 or 6 Del. C. §2532;

E.    Grant the State, pursuant to 29 Del. C. §2517(c)(2), its costs of investigation and attorney's fees;

F.    Award prejudgment and postjudgment interest upon all monies awarded to the State and to consumers as a result of this action; and

34

G.    Grant such further relief as This Court deems just and appropriate.

DEPARTMENT OF JUSTICE

*Richard W. Hubbard*

Olba N.M. Rybakoff (I.D. #2337) .
Richard W. Hubbard (I.D. #2442)
Patricia A. Dailey (I.D. #2422)
Deputy Attorneys General
Fraud and Consumer Protection Division
820 North French Street, 5th Floor
Wilmington, DE 19801
(302) 577-8600
Attorneys for Plaintiff

DATED: September 20, 1999

## Selective Insurance

6 North P.
Hunt Valle
410-771-£
410-771-£
dwebster@

PS Form **3800**, April 1995 *(Reverse)*

October 13, 1999

Frank Capano                          CERTIFIED MAIL
White Oak Builders, Inc.              RETURN RECEIPT REQUESTED
Christiana Ventures, Inc.
1 S. Old Baltimore Pike
Christiana, Delaware  19702

          Re:    Lea Eara Farms
                 Claim Number:  01675768
                 Policy Number:  S3208281

Dear Mr. Capano:

I acknowledge receipt of the Summons and Complaint served on Christiana Ventures on or about September 30, 1999.  I apologize for the delay in responding but I have been working with J.A. Montgomery to determine who each defendant was insured with and the applicable coverages.  I have now had the opportunity to review the complaint in conjunction with your insurance policy and must regretfully advise that there is no coverage for this claim/suit.  The basis of our coverage denial is the following policy language:

CG 00 01 COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   Insuring Agreement.
     a.   "We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies.
     b.   This insurance applies to bodily injury and property damage only if:
          (1)  The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and
          (2)  The bodily injury or property damage occurs during the policy period.

SECTION V. DEFINITIONS

9.   Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

12.  Property damage means:
     a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
     b.   Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the occurrence that caused it."

The allegations contained in the Complaint against Christiana Ventures are Consumer Fraud, Misleading, Deceptive Trade Practices, Deviation From Plans, County Code Violations, Use of Defective Materials, Substandard Materials and Oral Misrepresentation.  None of these claims meet the definition of an "occurrence" and there is no resulting "property damage".  Based on same, Selective Insurance Company will not be providing a defense or indemnification for this lawsuit.  There

● Page 2                                                    October 13, 1999

01675768
White Oak Builders, Inc.

 may be other reasons why coverage does not apply.  We do not waive our right to deny coverage for
any other valid reason which may arise.

It is my recommendation that you immediately alert personal counsel and provide them with a copy of
this correspondence so an Answer can be filed on behalf of Christiana Ventures, Inc. which is due
October 19, 1999.  Please feel free to contact me with any questions.

Sincerely,


Donna L. Webster
Claims Technical Specialist

cc:  Commerce National, Attn:  Nancy Washington, #4801

## Commercial Policy Common Declarations

| Date of Issue | | Issued At | |
|---|---|---|---|
| November 13, 1996 | JBM | Hunt Valley | KB |

**Selective** INSURANCE

**Policy No. S 1352759**

**Named Insured:** White Oak Inc
(See IL7016 0189)
**Address:** 1 South Old Baltimore Pike
Newark, New Castle County
DE 19702

**Policy Period:** Standard Time at Location of Designated Premises | **12:01 a.m.** | From **10-11-96** To **10-11-97**

**Representative:** Agent or Broker **J.A. Montgomery, Inc.** **# 4801**

Selective Way Insurance Company
Branchville, New Jersey 07890

### Schedule Of Coverage

[X] Commercial Property Coverage

[X] Commercial General Liability Coverage

[X] Commercial Automobile Coverage

[X] Commercial Inland Marine Coverage

[ ] Commercial Crime Coverage

[ ] Systems Breakdown Coverage

[ ] Farm Property Coverage

[ ] Farm Liability Coverage

[ ]

[ ]

[ ]

> In return for payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as indicated in this schedule. Insurance is provided only for those coverages for which a specific limit is shown on the attached coverage declarations.

DPP-9

**Total Policy Premium $ 53,468.00**
(This premium may be subject to adjustment)

Countersigned by _____ **NOV 14 1996**

Authorized Representative

F-543 (3/91)

BRANCH OFFICE COPY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY CHANGES | Endorsement # 3 |
|---|---|

| Named Insured: | Policy Number: S 1352759 |
|---|---|
| WHITE OAKS INC (SEE IL 70 16 0189) | Policy Effective Date: 10/11/96 |
| | Endorsement Effective Date: 05/15/97 |

Changes indicated in this endorsement affect all coverages provided under this

### COMMERCIAL POLICY

The Common Declarations Page is amended to reflect the changes indicated below by an ☒ " .

☐    Amend the Named Insured to read: _____

_____

☐    Amend the Insured's Address to read: _____

_____

☐    Coverage Parts of this policy are revised as follows:

☐    Add _____

☐    Delete _____

The Commercial Policy Coverage Schedule is amended to include these changes.

☒    Other Changes

ADD THE FOLLOWING NAMED INSURED TO THE LIST ON IL 70 16:

92. SEA & PINES CONSOLIDATED CORPORATION

| Pro-Rata Factor: | 0.408 | | |
|---|---|---|---|
| Number of Days | 149 | Total Endorsement Premium: | NIL |

**SEP 1 2 1997**

| 09/12/97 /HV/SJS | 4801 | |
|---|---|---|
| Date of Issue | Agent No | Authorized Representative Signature |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY CHANGES | Endorsement # | 3 |
| --- | --- | --- |

| Named Insured: | | |
| --- | --- | --- |
| | Policy Number: | S 1352759 |
| WHITE OAKS INC | Policy Effective Date: | 10/11/96 |
| (SEE IL 70 16 0189) | Endorsement Effective Date: | 02/17/97 |

Coverage Part Affected:

## COMMERCIAL GENERAL LIABILITY

## CHANGES

The above coverage part is hereby amended as follows:

ADDITIONAL INSURED FORM CG2010 1093 IS ADDED PER THE ATTACHED:

TOTAL ENDORSEMENT PREMIUM:     NIL

| 06/06/97 /HV/SJS | 4801 | JUN 18 1997 |
| --- | --- | --- |
| Date of Issue | Agent No. | Authorized Representative Signature |

IL 70 16 01 89

**S**elective **INSURANCE**  ADDi ONAL INSURED - OWNERS ESSEES OR CONTRACTORS (FORM B)

POLICY NUMBER:  S 1352759                              COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**  NEW CASTLE COUNTY DEPT. OF PUBLIC WORKS ROOM 130
2701 CAPITAL TRAIL
NEWARK, DE  19711

(If no entry appears above, information required to complete this endorsement will be shown in the Declaratic as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Copyright, Insurance Services Office, Inc., 1992                              CG 20 10 10

## POLICY CHANGES  Endorsement # 2

| Named Insured:<br>WHITE OAKS INC<br>(SEE IL 7016 0189) | Policy Number:  S 1352759 |
| | Policy Effective Date:  10/11/96 |
| | Endorsement Effective Date:  01/01/97 |

Changes indicated in this endorsement affect all coverages provided under this

### COMMERCIAL POLICY

The Common Declarations Page is amended to reflect the changes indicated below by an ☒ " .

[ ]  Amend the Named Insured to read:  _____

_____

[ ]  Amend the Insured's Address to read:  _____

_____

[ ]  Coverage Parts of this policy are revised as follows:

[ ]  Add  _____

[ ]  Delete_____

The Commercial Policy Coverage Schedule is amended to include these changes.

☒  Other Changes

ADD THE FOLLOWING NAMED INSURED TO THE LIST ON IL7016:

91. BOHEMIA HALL INC

| Pro-Rata Factor: | 0.775 | | |
| Number of Days | 283 | Total Endorsement Premium: | NIL |

**THIS ENDORSEMENT CP `NGES THE POLICY. PLEASE REA D IT CAREFULLY.**

POLICY CHANGES          Endorsement #          1

| Named Insured: | Policy Number: | S 1352759 |
|---|---|---|
| WHITE OAKS INC | | |
| (SEE IL 7016 0189) | Policy Effective Date: | 10/11/96 |
| | Endorsement Effective Date: | 11/05/96 |

Changes indicated in this endorsement affect all coverages provided under this

COMMERCIAL POLICY

The Common Declarations Page is amended to reflect the changes indicated below by an [X] ".

[  ]   Amend the Named Insured to read:  _____

_____

[  ]   Amend the Insured's Address to read:  _____

_____

[  ]   Coverage Parts of this policy are revised as follows:

[  ]   Add   _____

[  ]   Delete   _____

The Commercial Policy Coverage Schedule is amended to include these changes.

[X]   Other Changes

ADD THE FOLLOWING NAMED INSURED TO THE LIST ON IL7016:

89. I LOVE ITALY INC
90. MBC INC

| Pro-Rata Factor: | 0.932 | | |
|---|---|---|---|
| Number of Days | 340 | Total Endorsement Premium: | NIL |

| 02/22/97 /HV/SCL | 4801 | |
|---|---|---|
| Date of Issue | Agent No. | Authorized Representative Signature |

IL 70 10 04 88

**POLICY CHANGES**       Endorsement # _____

| | |
|---|---|
| Named Insured:<br><br>White Oak Builders Inc | Policy Number: _____<br><br>Policy Effective Date: _____<br><br>Endorsement Effective Date: _____ |

Coverage Part Affected:

## Comm Declaration

## CHANGES

The above coverage part is hereby amended as follows:

### Named Insured

1. White Oak Builders Inc
2. 600 Delaware Avenue Inc
3. Rivers End Inc
4. Smalleys Dam Venture Inc
5. Environmental Resources Inc
6. Cranbrook Development Co
7. Carriage Run Inc
8. Harmony Crest Inc
9. Soya Inc
10. The American Group
11. Joseph L Capano Builders Inc
12. Newbury Village Inc
13. Rt 40 & 7 Venture Inc
14. Gulls Nest Inc
15. Texco Inc
16. Bass Properties Inc
17. Capano Builders Inc
18. Canterbury Village L P
19. Olde Christiana Management Company Inc
20. FJM Limited Partnership
21. Golden Acres Inc
22. Open Spaces Inc
23. Cranbrook Realty
24. Windhover Company
25. Kent Company
26. Pro-To-Cal Realty Inc
27. Christiana Concrete Company Inc
28. Oak Run Inc

11/11/96
Date of Issue                    Agent No.                    Authorized Representative Signature

IL 70 16 01 89

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES          Endorsement # _____

| Named Insured: | Policy Number: _____ |
|---|---|
| White Oak Builders Inc | |
| | Policy Effective Date: _____ |
| | |
| | Endorsement Effective Date: _____ |

Coverage Part Affected:
        Common Declaration

## CHANGES

The above coverage part is hereby amended as follows:

### Named Insured

29. Christiana Ventures Inc
30. J O F R Inc
31. Tree Lane Associates Inc
32. Hawk's Nest Inc
33. 77 Associates Inc
34. Buttonwood Enterprises Inc
35. JYD Inc
36. Penn Manor Inc
37. Wellington Woods Maintenance Corp
38. Kensington Maintenance Corp
39. Valley Road Maintenance Assoc
40. Lakeside Maintenance Assoc
41. Clair Manor Inc
42. J L Capano Realty Inc
43. Capano Enterprises Inc
44. J L Capano Inc
45. J L Capano Realtor
46. Grady Inc
47. Christiana Excavating Company Inc
48. Olde Christiana Concrete Company Inc
49. Genesis Land Development
50. Genesis Masonry Sand Products
51. Kensington Inc
52. St Georges Trust
53. Raven Glen Inc
54. Capano Communities Inc
55. Pemberley Inc

11/12/96
_____          _____          _____
Date of Issue                Agent No.             Authorized Representative Signature

IL 70 16 01 89

**POLICY CHANGES**    Endorsement # _____

| Named Insured: | Policy Number: _____ |
|---|---|
| White Oak Builders Inc | Policy Effective Date: _____ |
| | Endorsement Effective Date: _____ |

Coverage Part Affected:
                    Common Declaration

## CHANGES

The above coverage part is hereby amended as follows:

### Named Insured

56. Wellington Trust
57. Springfields Maintenance Association
58. Rutledge Maintenance Association
59. Clair Manor Maintenance Association
60. Black Horse Realty Inc
61. Bear Crossing Ltd
62. 9244 Inc
63. Capko Custom Homes Inc
64. Route 13 Associates Inc
65. Cromwell Properties Inc
66. Cotswold Builders Inc
67. Richards Lane Inc
68. Wellington Group Inc
69. Rutledge Builders Inc
70. JNC Inc
71. Industry 40
72. Bellwether Manor Inc
73. Rutledge II Associates Inc
74. Hodav Inc
75. Fox Run Maintenance Assoc
76. Caplem Inc
77. Westbridge Inc
78. Springfields Inc
79. Springfield Ventures Inc
80. Bear Trac L L C
81. Glasgow Farms L L C
82. Route 7 & Joint L L C

_11/12/96_
Date of Issue                    Agent No.                    Authorized Representative Signature

IL 70 16 01 89

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES        Endorsement # _____

| | |
|---|---|
| Named Insured:<br>    White Oak Builders Inc | Policy Number: _____<br><br>Policy Effective Date: _____<br><br>Endorsement Effective Date: _____ |

Coverage Part Affected:

    Common Declaration

## CHANGES

The above coverage part is hereby amended as follows:

Named Insured

83. Boothhurst L L C
84. Del Investments Inc
85. Wyndom Inc
86. Stone Mill Inc
87. Salem Trace Inc
88. Route 72 Inc

_____
11/12/96
Date of Issue                    Agent No.                    Authorized Representative Signature

IL 70 16 01 89

THIS ENDORSEMENT CH  IGES THE POLICY. PLEASE  ̄AD IT CAREFULLY.

| POLICY CHANGES | Endorsement # | 5 |
|---|---|---|

| Named Insured: | Policy Number: | S 1352759 |
|---|---|---|
| WHTIE OAKS INC (SEE IL 70 16 0189) | Policy Effective Date: | 10/11/96 |
| | Endorsement Effective Date: | 04/11/97 |

Coverage Part Affected:

## COMMERCIAL GENERAL LIABILITY

### CHANGES

The above coverage part is hereby amended as follows:

ADDITIONAL INSURED FORM CG2010 1093  IS ADDED PER THE ATTACHED.

TOTAL ENDORSEMENT PREMIUM:        NIL

| 06/06/97 /HV/SJS | 4801 | JUN 1 0 1997 |
|---|---|---|
| Date of Issue | Agent No. | Authorized Representative Signature |

16 01 89

**POLICY CHANGES**     Endorsement #     6

| Named Insured: | | Policy Number: | S 1352759 |
|---|---|---|---|
| WHITE OAKS INC<br>(SEE IL 70 16 0189) | | Policy Effective Date: | 10/11/96 |
| | | Endorsement Effective Date: | 07/18/97 |

Coverage Part Affected:

## COMMERCIAL GENERAL LIABILITY

## CHANGES

The above coverage part is hereby amended as follows:

THE FOLLOWING LOCATION IS ADDED FOR LIABILITY PURPOSES ONLY:
LOTS 13-42 VALLEY POINTE
HOCKESSIN, NEW CASTLE COUNTY, DE 19707

TOTAL ENDORSEMENT PREMIUM:     NIL

| 09/12/97 /HV/SJS | 4801 | SEP 1 2 1997 EA |
|---|---|---|
| Date of Issue | Agent No. | Authorized Representative Signature |

IL 70 16 01 89

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### POLICY CHANGES          Endorsement #          3

| Named Insured: | | Policy Number: | S 1352759 |
|---|---|---|---|
| WHITE OAKS INC | | Policy Effective Date: | 10/11/96 |
| (SEE IL 70 16 0189) | | Endorsement Effective Date: | 02/17/97 |

Coverage Part Affected:

### COMMERCIAL GENERAL LIABILITY

### CHANGES

The above coverage part is hereby amended as follows:

ADDITIONAL INSURED FORM CG 2010 1093 IS ADDED PER THE ATTACHED:

TOTAL ENDORSEMENT PREMIUM:          NIL

| 06/06/97 /HV/SJS | 4801 | 1 9 1997 |
|---|---|---|
| Date of Issue | Agent No. | Authorized Representative Signature |

IL 70 16 01 89

# Selective
### INSURANCE
## ADDI...JNAL INSURED - OWNERS, ESSEES OR CONTRACTORS (FORM B)

POLICY NUMBER:  S 1352759                                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**   NEW CASTLE COUNTY DEPT. OF PUBLIC WORKS ROOM 130
2701 CAPITAL TRAIL
NEWARK, DE  19711

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Copyright, Insurance Services Office, Inc., 1992                        CG 20 10 10 93

Case 1:05-cv-00209-KAJ · Document 1-2 · Filed 05/18/2005 · Page 63 of 72

## POLICY CHANGES

Endorsement #    2

| Named Insured: | | |
|---|---|---|
| **WHITE OAK INC** | Policy Number: | S 1352759 |
| (SEE IL 7016 0189) | | |
| | Policy Effective Date: | 10/11/96 |
| | Endorsement Effective Date: | 11/01/96 |

Coverage Part Affected

## COMMERCIAL GENERAL LIABILITY

### CHANGES

The above coverage part is hereby amended as follows:

LOC 34C:  SEE LOC 34A

APARTMENT BUILDINGS
(T-001)

| | | | | | | (334) | (336) |
|---|---|---|---|---|---|---|---|
| ADD: | 60010 | 1 (u) | 64.865 | INCL | | 65 | INCLUDED |
| | | | | PRO RATA | | 61 | INCLUDED |

| | | | |
|---|---|---|---|
| (334) | | 61 | A.P. |
| (336) | | | |
| Pro Rata Factor: | 0.942 | | |
| Number Days: | 34? | | |
| Additional Premium: | | | $61 |

| 02/22/97  /HV/SCL | 4801 | |
|---|---|---|
| Date of Issue | Agent No. | Authorized Representative Signature |

IL 70 16 01 89



# ADDITIONAL INSURED OWNERS, LESSEES OR
# CONTRACTORS (FORM    )

POLICY NUMBER: S1352759

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:** New Castle County Dept. of Public Works Room
2701 Capital Trail
Newark, De 19711

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in th Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

11 85

Copyright, Insurance Services Office, Inc., 1992

CG 20 10 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement #     1

| Named Insured:<br>WHITE OAK INC<br>(SEE IL 7016 0189) | Policy Number:   S 1352759 |
|---|---|
| | Policy Effective Date:   10/11/96 |
| | Endorsement Effective Date:   11/01/96 |

Coverage Part Affected

## COMMERCIAL GENERAL LIABILITY

## CHANGES

The above coverage part is hereby amended as follows:

LOC 34A: 1442 BOHEMIA MILL ROAD, MIDDLETOWN, DE 19709

DWELLINGS - ONE-FAMILY (LESSOR'S RISK ONLY)
(T-001)

|  |  |  |  |  |  | (334) | (336) |
|---|---|---|---|---|---|---|---|
| ADD: | 63010 | 1 (u) | 48.876 | INCL | | 48 | INCLUDED |
| | | | | PRO RATA | | 45 | INCLUDED |

LOC 34B: SEE LOC 34A

DWELLINGS - ONE-FAMILY (LESSOR'S RISK ONLY)
(T-001)

|  |  |  |  |  |  | | |
|---|---|---|---|---|---|---|---|
| ADD: | 63010 | 1 (u) | 48.876 | INCL | | 48 | INCLUDED |
| | | | | PRO RATA | | 45 | INCLUDED |

|  |  |  |
|---|---|---|
| (334) | 90 | A.P. |
| (336) | | |
| Pro Rata Factor: 0.942 | | |
| Number Days: 344 | | |
| Additional Premium: | | $90 |

| 02/22/97 /HV/SCL | 4801 | |
|---|---|---|
| Date of Issue | Agent No. | Authorized Representative Signature |

IL 70 16 01 89



**Selective** INSURANCE

# ADDI. )NAL INSURED - OWNERS, ⸱SSEES OR CONTRACTORS (FORM B)

POLICY NUMBER:   S 1352759                                COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**     INLAND MORTGAGE CORPORATION
P.O. BOX 40616
INDIANAPOLIS, IN   46240

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Copyright, Insurance Services Office, Inc., 1992                              **CG 20 10 10 93**

## Selective INSURANCE

ADDITIONAL INSURED —
CONTRACTORS (FORM )

POLICY NUMBER: S1352759

COMMERCIAL GENERAL LIABILITY

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization:   *Inland Mortgage Corporation*
*P.O. Box 40616*
*Indianapolis, In 46240*

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Copyright, Insurance Services Office, Inc., 1992

CG 20 10 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES    Endorsement #    4

| Named Insured: | | Policy Number: | S 1352759 |
| --- | --- | --- | --- |
| WHITE OAKS INC (SEE IL 70 16 0189) | | Policy Effective Date: | 10/11/96 |
| | | Endorsement Effective Date: | 03/18/97 |

Coverage Part Affected:

### COMMERCIAL GENERAL LIABILITY

### CHANGES

The above coverage part is hereby amended as follows:

ADDITIONAL INSURED FORM CG2010 1093  IS ADDED PER THE ATTACHED.

TOTAL ENDORSEMENT PREMIUM:        NIL

| 06/06/97 /HV/SJS | 4801 | JUN 1 0 1997 |
| --- | --- | --- |
| Date of Issue | Agent No. | Authorized Representative Signature |

IL 70 16 01 89



**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS (FORM B)**

POLICY NUMBER:   S 1352759

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**   WAWA INC.
RED ROOF
260 WEST BALTIMORE PIKE
MEDIA, PA  19063

FOR LOCATION #3

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in th Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Copyright, Insurance Services Office, Inc., 1992

CG 20 10 10 93

POLICY NUMBER: S 1352759                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**   Wawa Inc
Red Roof
260 West Baltimore Pike
Median, Pa , 90 63

for location #3

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in th Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Copyright, Insurance Services Office, Inc., 1992

CG 20 10 10 93

**Selective** INSURANCE

*Inf. 75*

| New to Company | |
|---|---|
| Replaces Pol.# | |
| S 1352759 | |

Policy Number: S 1352759

Policy Effective Date: 10-11-96

Coverage Effective Date:
(Same as Policy Effective Date unless otherwise shown.)

Named Insured is:    [ ] Individual    [X] Corporation

[ ] Partnership    [ ] Joint Venture

[ ] Other

Business of Named Insured:  Carpentry Contractor

Insurance is provided only for those coverages for which a specific limit is shown in the following coverage schedule.

## Coverage Schedule

| Coverage | Limits |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $2,000,000. |
| Products-Completed Operations Aggregate Limit | $2,000,000. |
| Personal and Advertising Injury Limit | $1,000,000. |
| Each Occurrence Limit | $1,000,000. |
| Fire Damage Limit | $    50,000. ANY ONE FIRE |
| Medical Expense Limit | $    5,000. ANY ONE PERSON |
| | |
| | |
| | |

Forms and Endorsements:
F-639 (3/87)          IL0021 1194      CG2010 1093      IL0017 1185
CG7032 0490      CG0001 1093      CG2147 1093      CG2150 0989
CG2503 1185      CG2504 1185      IL8950 0496

| | Premium $      9,567.00 |
|---|---|
| | (This premium may be subject to adjustment.) |

F-545 (3/87)

BRANCH OFFICE COPY

**S**elective **INSURANCE**

This schedule lists classifications, exposures, rates and premiums for those coverage parts indicated below:

[X] Commercial General Liability      [ ] Products/Completed Operations
[ ] Owners and Contractors Protective Liability   [ ] Liquor Liability
                   [ ]

| CLASSIFICATION | CLASS CODE | PREMIUM BASIS | RATES PREMISES - OPERATIONS | RATES PRODUCTS - COMPLETED OPERATIONS | ADVANCE PREMIUM PREMISES - OPERATIONS | ADVANCE PREMIUM PRODUCTS - COMPLETED OPERATIONS |
|---|---|---|---|---|---|---|
| | | a) Area<br>c) Total Cost<br>p) Payroll<br>s) Gross Sales<br>u) Units<br>t) Acres | a) per 1000 square feet<br>c) per $1000 of Cost<br>p) per $1000 of Payroll<br>s) per $1000 of Sales<br>u) per Unit<br>t) per Acre | | | |
| CARPENTRY - CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING THREE STORIES IN HEIGHT<br><br>Loc 1A: 1 S Old Baltimore Pike, Newark, DE | 91340# | 600,000.00 (p) | 6.015 | 1.865 | 3,609.00 | 1,119.0 |
| CONTRACTORS - SUBCONTRACTED WORK - IN CONNECTION WITH BUILDING CONSTRUCTION, RECONSTRUCTION,REPAIR OR ERECTION - ONE OR TWO FAMILY DWELLINGS<br><br>Loc 1B: See Loc 1A | 91583 | 3,500,000.00 (c) | 0.161 | 0.341 | 564.00 | 1,194.C |
| VACANT LAND - OTHER THAN NOT-FOR-PROFIT<br><br>Loc 2A: Summit Bridge Road, East, Middletown, DE | 49451# | 173.00 (t) | 2.191 | INCL. | 379.00 | INC |

| Minimum Premium $ 208.00 / $ 312.00 | Total Advance Premium $ | Cont. | Cont. |
|---|---|---|---|

Location Of All Premises You Own, Rent or Control: (Enter Same if same as Address)
See Above Schedule

Your Interest In These Premises: [X] Owner   [ ] General Lessee   [ ] Tenant   [ ]

Part You Occupy: Portion

This Schedule lists all your premises, operations and other exposures, as they exist as of the Coverage Effective Date.

F-639 (3/87)

BRANCH OFFICE COPY