IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

THE STATE OF DELAWARE
*ex rel.,* M. JANE BRADY,
ATTORNEY GENERAL OF THE
STATE OF DELAWARE,

        Plaintiff,

        v.

WELLINGTON HOMES, INC., a Delaware
corporation, WELLINGTON HOMES,
L.L.C., a Delaware limited liability
corporation, 397 PROPERTIES, L.L.C.,
a Delaware limited liability corporation,
CHRISTIANA VENTURES, INC., a Delaware
corporation, ALBERT A. VIETRI, TINA
MARIE VIETRI, JOSEPH L. CAPANO, II,
and JOSEPH L. CAPANO,

        Defendants.

C.A. No. 99-

NON-ARBITRATION CASE

JURY OF TWELVE PERSONS
DEMANDED

## COMPLAINT

This civil enforcement action, brought by the State of Delaware against the above named defendants, seeks, *inter alia,* statutory penalties, restitution, investigative costs and attorneys fees under the Consumer Fraud Act and Uniform Deceptive Trade Practices Act. This action arises out of an investigation by the Consumer Protection Unit of the Attorney General's Office that revealed that the above named defendants engaged in unfair and deceptive practices in connection with the advertising and sale of new homes. This action is not subject to compulsory arbitration because the plaintiff is seeking, in part, statutory penalties. Superior Court Civil Rule 16.1(a). Upon personal knowledge of the Attorney General's investigators, information and belief, the State of Delaware alleges the following:

## I. The Parties

1.     Plaintiff State of Delaware, *ex rel.*, Attorney General M. Jane Brady, brings this action through the Delaware Department of Justice.

2.     Defendant Wellington Homes, Inc., is a Delaware corporation, with its principal place of business at 1601 Concord Pike, Suite 27, Wilmington, Delaware. The registered agent for Wellington Homes, Inc., is Joseph L. Capano, II.

3.     Defendant Wellington Homes, L.L.C., is a Delaware limited liability corporation, with its principal place of business at 1601 Concord Pike, Suite 27, Wilmington, Delaware. Wellington Homes, L.L.C., serves as its own registered agent.

4.     Defendant 397 Properties, L.L.C., ("397 Properties"), is a Delaware limited liability corporation, with its principal place of business at 1601 Concord Pike, Suite 27, Wilmington, Delaware. 397 Properties serves as its own registered agent.

5.     Defendant Christiana Ventures, Inc., ("Christiana Ventures"), is a Delaware corporation, with its principal place of business at 100 Bentley Lane, Shanlyn, Centerville, Delaware. Christiana Ventures serves as its own registered agent.

6.     Defendant Albert A. Vietri, ("Albert Vietri"), is an individual, and the father of defendant Tina Marie Vietri, residing at 1012 Yorklyn Road, Hockessin, Delaware. Albert Vietri was, at all times relevant hereto, an owner, manager, officer and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., and Wellington Homes, L.L.C.

7.     Defendant Tina Marie Vietri, ("Tina Vietri"), is an individual, and the daughter of defendant Albert Vietri, residing at 1012 Yorklyn Road, Hockessin, Delaware. Tina

Vietri was, at all times relevant hereto, an owner, manager, officer and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., and Wellington Homes, L.L.C.

      8.    Defendant Joseph L. Capano, II, ("Joseph Capano, II"), is an individual, and is the son of defendant Joseph L. Capano, residing at 300 Bartrum Lane, Hockessin, Delaware. Joseph Capano, II, was, at all times relevant hereto, an owner, manager, officer and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., and Wellington Homes, L.L.C.

      9.    Defendant Joseph L. Capano, ("Joseph Capano"), is an individual, and is the father of defendant Joseph L. Capano, II, residing at 436 Bohemia Mill, Middletown, Delaware 19709. Joseph Capano was, at times relevant hereto, a manager and an active participant in the day-to-day business affairs of corporate defendants 397 Properties, Wellington Homes, Inc., Wellington Homes, L.L.C., and Christiana Ventures, as well as a related corporation known as Bass Properties, Inc., described below.

      10.    At all times relevant hereto, defendants Wellington Homes, Inc., Wellington Homes, L.L.C., and 397 Properties, were several corporate entities used by the individual defendants, to develop, construct, advertise and sell single family homes, beginning from on or about January 1, 1996, and continuing through the present (hereinafter the "relevant period").

## II. Jurisdiction and Venue

      11.    The State brings this action pursuant to the Consumer Fraud Act, codified at 6 *Del. C.* § 2511, *et seq.*, and pursuant to the Uniform Deceptive Trade Practices Act ("UDTPA"), codified at 6 *Del. C.* § 2531, *et seq.* This action is not subject to compulsory arbitration because the

State is seeking, in part, to enforce a statutory penalty. Superior Court Civil Rule 16.1(a).

      12.    Venue for this action is statewide, in that the defendants sold and advertised homes to consumers throughout the State of Delaware. In addition, a number of the unlawful acts, as more fully described below, occurred in New Castle County.

### III. Facts

      13.   On or about March 14, 1988, Bass Properties acquired the tract of land in Middletown, Delaware, that later became "Lea Eara Farms," (more fully described below), from Earl and Alice Shoats for the sum of SEVEN HUNDRED SEVENTY-EIGHT THOUSAND FIVE HUNDRED DOLLARS ($778, 500).

      14.    Lea Eara Farms is now a residential development located in Middletown, Delaware, south of the Chesapeake and Delaware Canal. It was built in four phases by a network of corporations primarily managed or controlled by the four individual defendants, Joseph Capano, Joseph Capano, II, Albert Vietri and Tina Vietri (collectively "Individual Defendants.") The network of corporations used by the Individual Defendants includes, but is not limited to, defendants Wellington Homes, Inc., Wellington Homes, LLC, 397 Properties and Christiana Ventures, (collectively "Corporate Defendants"), as well as Delaware corporations and/or predecessor corporations of Corporate Defendants, Bass Properties, Inc., White Oak Builders, Inc., and White Oak Homes, Inc. (Individual Defendants and Corporate Defendants are hereafter collectively referred to as "Defendants").

      15.   Between October 22, 1990, and February 22, 1995, Joseph Capano and Bass Properties undertook various steps to plan and develop Lea Eara Farms, said development being more fully shown and described as Phase III of the Major Record Subdivision Plan of Lea Eara

Farms, as filed and recorded in the Office of the Recorder of Deeds in and for New Castle County, Delaware, in Microfilm Record No. 11181, and is hereby incorporated by reference, as if fully set forth herein.

16.    Construction of Lea Eara Farms, Phase III, including its development, design, and construction, was fully initiated and under way by January of 1996. All phases of construction were overseen and actively implemented by Defendants, initially through a corporate entity known as White Oak Builders, Inc., trading as "White Oak." During the course of the construction, advertising and sale of Lea Eara Farms, Defendants began phasing out White Oak, and phasing in Wellington Homes, Inc., and Wellington Homes, L.L.C., (collectively "Wellington Homes") as the Defendants' builder at Lea Eara Farms.

17.    At all times relevant hereto, defendants used 397 Properties as the vehicle for transfer of title out of their corporate network described above, and into the names of consumer purchasers at Lea Eara Farms. In addition, defendants also used 397 Properties as a marketing entity, which marketed, promoted and advertised the aforesaid properties to consumers.

18.    At all times relevant hereto, defendants used Wellington Homes as the builder of homes in Lea Eara Farms, through their corporate network, and collectively marketed and sold Lea Eara Farms properties through their corporate network under the name "Wellington Homes."

19.    At all times relevant hereto, defendants used Christiana Ventures as the vehicle for transfer of title out of their corporate network described above, and into the name of 397 Properties, prior to the transfer of title from 397 Properties to consumer purchasers at Lea Eara Farms. In limited instances, defendants also used Christiana Ventures as the vehicle for transfer of title out of their corporate network described above, and to consumer purchasers at Lea Eara Farms.

20.    At all times relevant hereto, Bass Properties, Inc., ("Bass Properties"), acquired the land and held title to the property that ultimately became the subdivision of Lea Eara Farms.  In most instances relevant hereto, Bass Properties transferred the subdivided lots to Christiana Ventures, before Christiana Ventures transferred the same to 397 Properties.  In limited instances, Bass Properties directly transferred subdivided lots to 397 Properties, which in turn, were transferred to consumer purchasers.

21.    White Oak Builders, Inc. and White Oak Homes, Inc. (collectively, "White Oak") were predecessor builders at Lea Eara Farms, prior to Wellington Homes.  At all times relevant hereto, White Oak was controlled and managed by one or more of the same individuals who controlled and managed Wellington Homes.  Upon information and belief, Wellington Homes is the successor-in-interest to White Oak, and utilized employees and facilities common to Wellington Homes and 397 Properties.

22.    At all times relevant hereto, the Individual Defendants actively participated in, controlled and managed the building, advertising and sale of homes at Lea Eara Farms, individually, and through one or more of the Corporate Defendants and their agents, and actively participated in the day-to-day affairs of the aforesaid development, construction, advertising and sale of homes at Lea Eara Farms.

23.    At or about the same time defendants began phasing in Wellington Homes in place of White Oak, defendants also retained the services of Stoltz Realty ("Stoltz"), as their agent, to market and sell the Phase III lots at Lea Eara Farms to consumers.

24.    At all times relevant hereto, and more particularly, in connection with defendants' aforesaid marketing and sale of Phase III lots to the public, defendants, directly and

6

through their agents and employees, used a single page list of "Standard Features" to advertise and promote the homes they were building at Lea Eara Farms.  Among other things, the "Standard Features" list offered by defendants to prospective purchasers represented, *inter alia*, the following items were standard features in homes built at Lea Eara Farms by Defendants:

"Dramatic 2-Story Open Foyer,"
"Nine (9) Foot Ceilings,"
"2 Car Side Entry Garage,"
"Five (5) Ton High Efficiency Air Conditioner,"
"Cultured Marble Vanity Tops,"
"Yorketown Maple Kitchen Cabinets,"
"Luxurious Master Suites with Separate Shower with Glass Doors, "
"Energy Efficient Insulation,"
and "Front Door Brass Package."

25.   By the end of 1996, Defendants completed construction of a sample home or "Model Home," which was built on Lot #1 of the Lea Eara Farms development, and began using the Model Home directly, and through their agents and employees, as a sales tool, in connection with their sales, promotion and advertising of their homes to prospective purchasers.

26.   Among other things, Defendants represented to prospective purchasers that the homes they were building and selling at Lea Eara Farms would  include all the standard  features in the Model Home.

27.   Beginning in or about May of 1997, Defendants began to affix labels and signs upon certain features and "extras" in the Model Home, which for the first time identified them as "options" available to prospective purchasers at an additional cost.

28.   At all times relevant hereto, and more particularly, in connection with defendants' aforesaid marketing and sale of Phase III lots to the public, defendants, directly and through their agents and employees, used preprinted brochures as a sales tool, in connection with

their sales, promotion and advertising of their homes to prospective purchasers. Among other things, defendants' preprinted sales brochures repeatedly represented that homes built by Wellington Homes were of "Outstanding Quality."

29.    As a direct result of defendants' aforesaid promotions and advertisements, multiple consumer purchasers entered into contracts for the construction and purchase of new homes at Lea Eara Farms with one or more Defendants.  Such consumers included, but are not limited to, at least the following individuals and properties, during the relevant period:

A.    Louise and Jesse Giambrone at 307 Jessica Drive, Middletown, Delaware;

B.    Pamela and Samuel Sellers at 201 West Union Drive, Middletown, Delaware;

C.    Theresa and Ronald Debbrecht and Edward and Patricia O'Neill at 204 West Union Drive, Middletown, Delaware;

D.    Barbara and James Stephens at 200 West Union Drive, Middletown, Delaware;

E.    Clifford and Raye Goldsborough at 110 East Cedarwood Drive, Middletown, Delaware;

F.    Lawrence and Michele Gillen at 112 East Cedarwood Drive, Middletown, Delaware;

G.    Karl and Audrey Kenney at 101 Dawn Drive, Middletown, Delaware.

30.    At times relevant hereto, purchasers and prospective purchasers of homes at Lea Eara Farms, including one or more of the consumers identified in paragraph 29, above, were told that the "Standard Features" promoted and advertised by defendants, as more fully described in paragraph 24, above, would be standard features included in their own homes.

31.    At all times relevant hereto, purchasers and prospective purchasers of homes at Lea Eara Farms, including one or more of the consumers identified in paragraph 29, above, were

told that the representations made by defendants in their sales brochures, including their representations of "Outstanding Quality," as more fully described in paragraph 28, above, would be consistent with qualities and features included in their own homes.

32.    At all times relevant hereto, purchasers and prospective purchasers of homes at Lea Eara Farms, including one or more of the consumers listed in paragraph 29, above, were told that the "features" and "extras," displayed by defendants in their Model Home would be "features" and "extras" included in their own homes.

33.    At times relevant hereto, defendants actively prohibited and prevented purchasers or prospective purchasers of homes at Lea Eara Farms, from visiting or observing the construction of their homes, notwithstanding consumer requests to do the same.

34.    Upon completion and sale of the homes in Lea Eara Farms, numerous material defects and deviations from the plans, sales brochures and/or the Model Home, were discovered.

35.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and deviations from the plans, sales brochures and/or the Model Home, Defendants failed and refused to make reasonable bona fide efforts to correct and conform the same.

36.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and deviations from the plans, sales brochures and/or the Model Home, Defendants falsely represented such items were not part of Defendants' obligations to their consumer purchasers, and thus were not subject to correction or repair.

37.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and/or deviations from the plans, sales brochures and/or the

9

Model Home, Defendants represented to their consumer purchasers, that Defendants were permitted to substitute materials.

38.    Notwithstanding complaints from one or more consumer purchasers regarding the aforesaid numerous material defects and/or deviations from the plans, sales brochures and/or the model home, Defendants falsely represented that they were unable to gain access to their purchasers' premises to correct or conform the same.

## IV.  VIOLATIONS

### COUNT ONE

#### (Consumer Fraud - Misleading Model Home)

39.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 38, inclusive, as if they were fully set forth herein.

40.    At all times relevant hereto, Defendants, directly and through their agents and employees, led purchasers of homes in Lea Eara Farms to believe that the homes they had purchased would conform to the Model Home displayed by Defendants, when in fact, such homes substantially and materially deviated from the Model Home.

41.    Such substantial and material deviations included, but are not limited to, at least the following:

|     |        |     |                                                          |
|-----|--------|-----|----------------------------------------------------------|
| (A) | Doors  | (1) | Missing deadbolt door locks;                             |
|     |        | (2) | No door in some door frames;                             |
|     |        | (3) | Inferior sliding glass doors and/or door handles;        |
|     |        | (4) | No doorbells;                                            |
| (B) | Stairs | (1) | Narrower and more enclosed stairs;                       |
|     |        | (2) | No "bull-nose" or wrap-around bottom step;               |
| (C) | Sinks  | (1) | Sterling plastic faucets, not Moen chrome metal faucets; |

|     |     | (2)  | No cultured marble vanity tops; |
| --- | --- | --- | --- |
| (D) | Bathrooms | (1) | No elongated toilets; |
|     |     | (2) | Sterling toilets instead of Kohler toilets; |
|     |     | (3) | No shower doors; |
|     |     | (4) | Pieced shower units instead of one-piece units; |
|     |     | (5) | No seats in shower stalls; |
|     |     | (6) | No decorative etching in shower stalls; |
|     |     | (7) | Smaller bathroom sinks; |
|     |     | (8) | Inferior wood or wood lamination in bathroom cabinets; |
| (E) | Kitchens | (1) | Inferior wood or wood lamination in kitchen cabinets; |
|     |     | (2) | Smaller kitchen shelves and cabinets; |
|     |     | (3) | Smaller kitchen pantries; |
|     |     | (4) | Smaller kitchen sinks; |
|     |     | (5) | No water lines for ice makers; |
| (F) | Other | (2) | Smaller air conditioning units; |
|     |     | (3) | Smaller circuit breaker boxes; |
|     |     | (4) | Smaller skylights; |
|     |     | (5) | Unfinished garages; |
|     |     | (6) | Smaller hot water heaters; |
|     |     | (7) | No furnace shut-off switches at top of basement stairs; |
|     |     | (8) | Larger gaps between floor joists; |
|     |     | (9) | No bridging between floor joists; |
|     |     | (28) | No full tilt windows; |
|     |     | (30) | Inferior ceiling fans; |
|     |     | (31) | Inferior light fixtures; |
|     |     | (32) | No wooden kick-plates in cabinet bases; |
|     |     | (33) | No attic light switches in closet; |
|     |     | (34) | No truss rafters in attic; and |
|     |     | (35) | No fiberglass insulation. |

42.     Defendants' aforesaid presentation of the Model Home to consumers as a
representation of the home they would build, and their subsequent failure to provide the same, was
deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.*
§2513(a).

43.     Defendants' aforesaid conduct was willful in that they knew or should have

known such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT TWO

### (UDTPA - Misleading Model Home - Goods Not of a Particular Style or Model)

44.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 - 43, inclusive, as if they were fully set forth herein.

45.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led purchasers of homes in Lea Eara Farms to believe that the home they had purchased would be of the particular style or model as the Model Home they were shown, when in fact, such homes substantially and materially deviated from the Model Home.

46.    Such substantial and material deviations included, but are not limited to, all those substantial and material deviations set forth in paragraph 41, above.

47.    Defendants' presentation of their Model Home to consumers as a representation of the homes they would build, and their subsequent delivery of homes which substantially and materially deviated from the Model Home, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

48.    At all relevant times relevant hereto, Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT THREE

### (Deceptive Trade Practice - Model Home Was Likely to Confuse or Mislead)

49.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

12

1 - 48, inclusive, as if they were fully set forth herein.

50.     At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that the home they had purchased would be of the particular style or model as the Model Home they were shown, when in fact, the homes that were delivered substantially and materially deviated from the Model Home.

51.     Such substantial and material deviations included, but are not limited to, all those substantial and material deviations as set forth in paragraph 41, above.

52.     Defendants' aforesaid conduct was a deceptive trade practice in violation of 6 *Del. C.* §2532(12), in that it created a likelihood of confusion or misunderstanding, in that one or more purchasers could be or were led to believe, that the homes they had bought would conform to the Model Home they were shown.

53.     Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT FOUR

### (Consumer Fraud - Misleading Lists and Sales Brochure)

54.     Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 - 53, inclusive, as if they were fully set forth herein.

55.     At all times relevant hereto, Defendants directly and through their agents and employees, led purchasers of homes in Lea Eara Farms to believe that their homes would contain all of the "Standard Features" listed in Defendants' sales brochures, when in fact, their homes did not contain all such "Standard Features."

13

56.    Such "Standard Features" as promised to consumers in Defendants' lists and sales brochures, include those items set forth in paragraph 24 above, and also include, but are not limited to, the following:

(1)  five-ton air conditioner,
(2)  two-story open foyer,
(3)  nine-foot ceilings,
(4)  glass doors on master suite showers,
(5)  ceiling fans, and/or
(6)  full tilt windows.

57.    Defendants' presentation of such lists and sales brochure to consumers as a representation of the homes they would build, and the "Standard Features" they would contain, and their subsequent failure to provide the same, was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

58.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT FIVE

### (UDTPA - Goods Not of a Particular Style or Model as per Lists and Sales Brochures)

59.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 58 inclusive, as if they were fully set forth herein.

60.    At all times relevant hereto, Defendants directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes would contain all of the "Standard Features" listed in the sales brochures and lists they were shown by Defendants, when in fact, their homes did not contain all such "Standard Features."

14

61. Such "Standard Features" as promised to consumers in Defendants' lists and sales brochures include those items set forth in paragraph 24, above, as well as those items set forth in paragraph 56, above.

62. Defendants' presentation of the aforesaid sales brochures and lists to consumers as a representation of the "Standard Features" in the homes they would build, and their subsequent failure to deliver all such "Standard Features" to consumer purchasers, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

63. Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532 (7).

## COUNT SIX

### (UDTPA - Sales Brochures and Lists Likely To Confuse Or Mislead)

64. Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 63, inclusive, as if they were fully set forth herein.

65. At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their home would contain all of the "Standard Features" listed in Defendants' sales brochures and lists, when in fact their home did not contain all such "Standard Features."

66. Such "Standard Features" as promised to consumers in Defendants' sales brochures and lists include, but are not limited to, those items listed in paragraphs 24 and 56, above.

67. Defendants' aforesaid conduct was a deceptive trade practice in violation of 6 *Del. C.* §2532(12), in that it created a likelihood of confusion or misunderstanding, in that one or

more purchasers could be or were led to believe, that the homes they had purchased from Defendants would contain all of the "Standard Features" promised by Defendants' in their sales brochures and lists.

68.    Defendants' conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT SEVEN

### (Consumer Fraud – Deviation From Approved Plans.)

69.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 68, inclusive, as if they were fully set forth herein.

70.    At all times relevant hereto, Defendants directly and through their agents and employees, filed or caused to be filed, with certain government authorities, including with the New Castle County Department of Land Use, certain plans, drawings and specifications, (the "Plans") for the development of Lea Eara Farms. Such Plans, as approved by such government authorities, provided notice to the world, including notice to consumers, of the nature and type of development Defendants were building, and more particularly, notice of the type of homes Defendants were building at Lea Eara Farms.

71.    Absent any notice to or approval from consumers or the proper government authorities, Defendants substantially and materially deviated from the aforesaid Plans, and failed to provide homes to consumers which conformed to the Plans as were submitted to government authorities, including the New Castle County Department of Land Use.

72.    Defendants' said failure to so inform consumer purchasers of such deviations, and their subsequent delivery of homes which substantially and materially deviated from the Plans

as submitted to government authorities for approval, was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

73.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT EIGHT

### (UDTPA-Goods Not of a Particular Style or Model Due to Deviation from Approved Plans)

74.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 73, inclusive, as if they were fully set forth herein.

75.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, failed to disclose to one or more purchasers of homes in Lea Eara Farms that their home did not conform to the Plans for that type of home that were submitted to government authorities, including to the New Castle County Department of Land Use for approval.

76.    Defendants' aforesaid failure to inform consumer purchasers of such deviations, and/or their subsequent delivery of homes which substantially and materially deviated from the aforesaid Plans, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

77.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT NINE

### (UDTPA - Plan Deviations Likely to Confuse or Mislead)

78.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 77, inclusive, as if they were fully set forth herein.

17

79.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, failed to disclose to one or more purchasers of homes in Lea Eara Farms that their home did not conform to the Plans Defendants submitted to the governmental authorities, including to the New Castle County Department of Land Use, for approval.

80.    Defendants' aforesaid conduct was a deceptive trade practice in violation of 6 *Del. C.* §2532(12), in that it created a likelihood of confusion or misunderstanding from said failure to inform purchasers of Defendants' deviations from the aforesaid Plans, and/or Defendants' subsequent delivery of homes that substantially and materially deviated from the Plans.

81.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

### COUNT TEN

### (Consumer Fraud - County Code Violations.)

82.    Plaintiff hereby repeats and realleges the allegations set forth in paragraph 1 through 81, inclusive, as if they were fully set forth herein.

83.    At times relevant hereto, Defendants directly and through their agents and employees, caused the building and construction of the homes in Lea Eara Farms to substantially and materially deviate from the requirements of the New Castle County Building Code (the BOCA National Building Code/1990, as amended)(hereafter "NCC Building Code").

84.    Defendants' subsequent sale and delivery of homes to one or more consumer purchasers which did not comply with the NCC Building Code, and/or their failure to inform consumer purchasers of such substantial and material deviation from the requirements of the NCC

Building Code, was deceptive, false and misleading, and constituted an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

85.    Defendants' sale of the aforesaid homes to consumer purchasers which substantially and materially deviated from the requirements of the NCC Building Code, constitutes a *per se* violation of 6 *Del. C.* §2513(a).

86.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

### COUNT ELEVEN

### (UDTPA - Goods Not of a Particular Style or Model due to County Code Violations)

87.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 86 inclusive, as if they were fully set forth herein.

88.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, sold homes to one or more consumer purchasers which had substantial and material deviations from the requirements of the NCC Building Code.

89.    Defendants' aforesaid sale of homes which substantially and materially deviated from the requirements of the NCC Building Code, and/or their failure to inform consumer purchasers of such deviations, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

90.    Defendants' aforesaid sale of homes to consumer purchasers which substantially and materially deviated from the requirements of the NCC Building Code, was a *per se* deceptive trade practice in violation of 6 *Del. C.* §2532(7).

91.    Defendants' conduct was willful in that they knew or should have known that

such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT TWELVE

### (UDTPA – County Code Violations Likely To Confuse Or Mislead)

92.     Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 91, inclusive, as if they were fully set forth herein.

93.     At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, sold homes to one or more consumer purchasers in Lea Eara Farms which substantially and materially deviated from the requirements of the NCC Building Code.

94.     Defendants' aforesaid conduct created a likelihood of confusion or misunderstanding, in that said sale of homes to consumer purchasers led such consumer purchasers to believe their homes had been constructed in compliance with all applicable laws and regulations, including the NCC Building Code, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

95.     Defendants' aforesaid sale of homes to consumer purchasers which substantially and materially deviated from the requirements of the NCC Building Code, was a *per se* deceptive trade practice in violation of 6 *Del. C.* §2532(12).

96.     Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT THIRTEEN

### (Consumer Fraud – Defective Products)

97.     Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

1 through 96, inclusive, as if they were fully set forth herein.

98.    At all times relevant hereto, Defendants, directly and through their agents and employees, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their homes would be of "Outstanding Quality," when in fact, their homes were defective in several material respects, including, but not limited to: (1) Warped and/or bulging walls; (2) Excessive cracks in the foundation; (3) Water leakage, and/or; (4) Structurally unsound or unstable areas within the homes.

99.    Defendants' representation of the homes as being of "Outstanding Quality" and their subsequent delivery of materially defective homes was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

100.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT FOURTEEN

### (UDTPA - Goods Not of a Particular Style or Model due to Defects)

101.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 100 inclusive, as if they were fully set forth herein.

102.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact, their homes were defective in several material respects.

103.    Such material defects found in the homes of consumer purchasers included, but were not limited to, the defects set forth in paragraph 98, above.

21

104.    Defendants' representations that their homes were of "Outstanding Quality" and their subsequent delivery of homes that were materially defective was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

105.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT FIFTEEN

### (UDTPA – Defective Product Likely to Confuse or Mislead)

106.    Plaintiff hereby repeats and realleges the above-stated allegations in paragraphs 1 through 105, inclusive, as if they were fully set forth herein.

107.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact, their homes were defective in several material respects.

108.    Such defective aspects of these homes included, but were not limited to, the defects set forth in paragraph 98, above.

109.    Defendants' aforesaid conduct created a likelihood of confusion or misunderstanding, in that one or more consumer purchasers could be or were led to believe that the homes they had bought were of "Outstanding Quality" when in fact, such homes were materially defective, and Defendants' conduct was therefore was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

110.    Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT SIXTEEN

### (Consumer Fraud--Defective Materials)

111.   Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 110, inclusive, as if they were fully set forth herein.

112.   At all times relevant hereto, Defendants, directly and through their agents and employees, led one or more purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact, Defendants used or caused to be used, defective and substandard materials in the construction of homes in Lea Eara Farms.

113.   Such defective and substandard materials included, but were not limited to: (1) Watered-down concrete foundation walls; (2) Green lumber and inferior lumber in floor joists, framing and interiors, and/or; (3) Rafters that were cut too short for their purpose.

114.   Defendants' representation of these homes to consumer purchasers as homes of "Outstanding Quality" and their subsequent delivery of homes that were constructed with defective and substandard materials was deceptive, false and misleading, and constitutes an unlawful practice in violation of 6 *Del. C.* §2513(a).

115.   Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT SEVENTEEN

### (UDTPA - Goods Not of a Particular Style or Model due to Defective Materials)

116.   Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 115, inclusive, as if they were fully set forth herein.

117.   At all times relevant hereto, Defendants, directly and through their agents and

23

employees, and in the course of their business, vocation, or occupation, led one or more purchasers

of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact

Defendants used, or caused to be used, defective and substandard materials in the construction of

homes in Lea Eara Farms.

118.    Such defective and substandard materials included, but were not limited to,

the defective and substandard materials set forth in paragraph 113, above.

119.    Defendants' representation of these homes as being of "Outstanding Quality"

to consumer purchasers and their subsequent delivery of homes that were constructed with defective

and substandard materials  was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

120.    Defendants' aforesaid conduct was willful in that they knew or should have

known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

**COUNT EIGHTEEN**

**(UDTPA - Defective Materials Likely To Confuse or Mislead)**

121.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

1 through 120 inclusive, as if they were fully set forth herein.

122.    At all times relevant hereto, Defendants, directly and through their agents and

employees, and in the course of their business, vocation or occupation, led one or more purchasers

of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact

defective and substandard materials were used in the construction of their homes.

123.    Such defective and substandard materials included, but were not limited to,

the defective and substandard materials set forth in paragraph 113, above.

124.    Defendants' aforesaid conduct created a likelihood of confusion or of

24

misunderstanding, in that consumer purchasers could be or were led to believe that their homes were

of "Outstanding Quality" when in fact, such homes were constructed with defective and substandard

materials, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

125.    Defendants' aforesaid conduct was willful in that they knew or should have

known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT NINETEEN

### (Consumer Fraud—Substandard Construction)

126.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs

1 through 125, inclusive, as if they were fully set forth herein.

127.    At all times relevant hereto, Defendants, directly and through their agents and

employees, led one or more consumer purchasers to believe that their homes were of "Outstanding

Quality" when in fact substandard and improper construction practices were used in the construction

of their homes.

128.    Such substandard and improper construction practices included, but were not

limited to:

(1)    Installing insulation and drywall before installing the siding;
(2)    Failing to properly attach the siding;
(3)    Nailing the roofing shingles in the wrong location;
(4)    Failing to properly attach the roof to the rafters;
(5)    Failing to compact the soil before pouring the concrete for the front stoop;
(6)    Allowing lumber to lie outside in the natural elements prior to its use;
(7)    Failing to provide supports for certain water, sewer, electric, and/or cable lines;
(8)    Improper installation of air ducts and vents;
(9)    Improper routing of water, sewer, electric, cable and air conditioning lines;
(10)   Failing to properly insulate certain rooms or areas;
(11)   Improperly supporting cantilevered projections; and/or
(12)   Improper grading of terrain.

129.    Defendants' representation to purchasers that their homes were of "Outstanding Quality" and their subsequent delivery of homes that were constructed with improper and substandard construction practices was deceptive, false and misleading, and constitutes an unlawful practice in violation of 6 *Del. C.* §2513(a).

130.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

<u>COUNT TWENTY</u>

<u>(UDTPA - Goods Not of a Particular Style or Model due to Substandard Construction)</u>

131.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 130, inclusive, as if they were fully set forth herein.

132.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact improper and substandard construction practices were used in the construction of their homes.

133.    Such improper and substandard construction practices included, but were not limited to, the improper and substandard construction practices set forth in paragraph 128, above.

134.    Defendants' representation to purchasers of their homes as of "Outstanding Quality" and their subsequent delivery of homes that were constructed with improper and substandard construction practices was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

135.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

<u>COUNT TWENTY-ONE</u>

26

<u>(UDTPA - Substandard Construction Likely to Confuse or Mislead)</u>

136.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 135, inclusive, as if they were fully set forth herein.

137.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their homes were of "Outstanding Quality" when in fact  improper and substandard construction practices were used in the construction of their homes.

138.    Such improper and substandard construction practices included, but were not limited to, the improper and substandard construction practices stated in paragraph 128, above.

139.    Defendants' above conduct created a likelihood of confusion or of misunderstanding, in that one or more purchasers could be or were led to believe that their homes were of "Outstanding Quality" when in fact they were constructed with improper and substandard construction practices, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

140.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

**COUNT TWENTY-TWO**

<u>(Consumer Fraud--Oral Misrepresentations or False Promises.)</u>

141.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 140 inclusive, as if they were fully set forth herein.

142.    At all times relevant hereto, Defendants directly and through their agents and employees, made oral misrepresentations and/or false promises to one or more consumer purchasers

of homes in Lea Eara Farms. Such oral misrepresentations or false promises included, but were not limited to promises of:

        (1) Installation of upgraded carpet,
        (2) Upgraded cabinets,
        (3) Upgraded electrical wiring and fixtures,
        (4) Installation of sidewalks,
        (5) Landscaping,
        (6) Maintenance of sod,
        (7) Regrading of improperly graded terrain,
        (8) Installation of a cathedral ceiling, and/or
        (9) Installation of handles and knobs for cabinets.

    143.    Defendants' oral misrepresentations or false promises were deceptive, false and misleading, and constitute an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

    144.    At all times relevant hereto, Defendants' conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

### COUNT TWENTY-THREE

**(UDTPA-Goods Not of A Particular Style or Model-Oral Misrepresentations/False Promises)**

    145.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 144, inclusive, as if they were fully set forth herein.

    146.    At all times relevant hereto, Defendants, directly and through their agents, and in the course of their business, vocation, or occupation, made oral misrepresentations or false promises to one or more consumer purchasers of homes in Lea Eara Farms. Such oral misrepresentations or false promises included, but were not limited to, the oral misrepresentations or false promises set forth in paragraph 142, above.

    147.    Defendants aforesaid oral misrepresentations or false promises, and/or their delivery of homes which substantially and materially deviated from such oral misrepresentations or

false promises, was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

148.    Defendants' aforesaid conduct was willful in that they knew or should have known that such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

### COUNT TWENTY-FOUR

### (UDTPA - Oral Misrepresentations and False Promises Likely to Confuse or Mislead)

149.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 148, inclusive, as if they were fully set forth herein

150.    At all times relevant hereto, Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more purchasers of homes in Lea Eara Farms to believe certain oral misrepresentations or false promises.

151.    Such oral misrepresentations or false promises included, but were not limited to, the oral misrepresentations or false promises set forth in paragraph 142, above.

152.    Defendants' aforesaid conduct created a likelihood of confusion or of misunderstanding in that one or more purchasers could be or were led to believe such oral misrepresentations or false promises, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

153.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

### COUNT TWENTY-FIVE

### (Consumer Fraud-Deviations from Plans or Drawings

154.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 153, inclusive, as if they were fully set forth herein.

155.    At all times relevant hereto, the Defendants, directly and through their agents and employees, led one or more purchasers of homes in Lea Eara Farms to believe that their home would conform to the plans or drawings they were shown by the Defendants, or plans or drawings they had agreed to with Defendants, when in fact, the homes that were delivered substantially and materially deviated from such plans or drawings.

156.    Defendants' representation of the homes to consumer purchasers as conforming to such plans or drawings and their subsequent failure to provide what they promised, was deceptive, false and misleading, and constitutes an unlawful act or practice in violation of 6 *Del. C.* §2513(a).

157.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

### COUNT TWENTY-SIX

### (UDTPA - Goods Not of Particular Style or Model - Deviations from Plans or Drawings)

158.    Plaintiff hereby repeats and realleges the above-stated allegations in paragraphs 1 through 157, inclusive, as if they were fully set forth herein.

159.    At all times relevant hereto, Defendants, directly and through their agents, and in the course of their business, vocation, or occupation, led one or more purchasers of homes in Lea Eara Farms to believe that their homes conformed to the plans or drawings they had been shown by Defendants, or plans or drawings they had agreed to with Defendants, when in fact, the homes that were delivered substantially and materially deviated from such plans or drawings.

160.    Defendants aforesaid representation of the homes to purchasers as conforming to such plans or drawings and their subsequent delivery of homes which substantially

and materially deviated from such plans or drawings was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

161.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(7).

## COUNT TWENTY-SEVEN

### (UDTPA - Deviations from Plans or Drawings Likely to Confuse or Mislead)

162.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 161, inclusive, as if they were fully set forth herein.

163.    At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation or occupation, led one or more consumer purchasers of homes in Lea Eara Farms to believe that their home conformed to the plans or drawings they had been shown by the Defendants, or to the plans or drawings they had agreed to with Defendants, when in fact the homes that were delivered substantially and materially deviated from such plans or drawings.

164.    Defendants' aforesaid conduct created a likelihood of confusion or of misunderstanding, in that one or more purchasers could be or were led to believe, that the homes they had bought would conform to such plans or drawings, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

165.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2532(12).

## COUNT TWENTY-EIGHT

### Consumer Fraud: Price Gouging

31

166.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 165, inclusive, as if they were fully set forth herein.

167.    At all times relevant hereto, the Defendants, directly and through their agents and employees, represented to one or more purchasers of homes in Lea Eara Farms that the final price of their homes was fixed and included a number of standard features, when in fact, Defendants charged consumer purchasers additional monies for items that were standard or were represented as standard by the Defendants.

168.    Such items that were standard or were represented as standard by Defendants include, but are not limited to: (1) White cabinets; (2) Side-entry garage; (3) Nine foot ceilings; and/or (4) A master bedroom sitting room.

169.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 *Del. C.* §2513(a).

## COUNT TWENTY-NINE

### (UDTPA - Goods Not of a Particular Style or Model due to Price Gouging)

170.    Plaintiff hereby repeats and realleges the above-stated allegations in paragraphs 1 through 169, inclusive, as if they were fully set forth herein.

171.    At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, represented to one or more purchasers of homes in Lea Eara Farms to that the final price of their homes was fixed and included a number of standard features, when in fact, Defendants charged consumer purchasers additional monies for items that were standard or were represented as standard by the Defendants.

172.    Such items that were standard or were represented as standard included, but

32

are not limited to, those items listed in paragraph 168, above.

173.    Defendants aforesaid representation of the homes to purchasers as including certain standard features and their subsequent assessments of undisclosed charges upon consumer purchasers was a deceptive trade practice in violation of 6 *Del. C.* §2532(7).

174.    Defendants' aforesaid conduct was willful in that they knew or should have known such conduct was of the nature prohibited by 6 Del. C. §2532(7).

### COUNT THIRTY

### (UDTPA - Price Gouging Likely to Confuse or Mislead)

175.    Plaintiff hereby repeats and realleges the allegations set forth in paragraphs 1 through 174, inclusive, as if they were fully set forth herein.

176.    At all times relevant hereto, the Defendants, directly and through their agents and employees, and in the course of their business, vocation, or occupation, represented to one or more purchasers of homes in Lea Eara Farms to that the final price of their homes was fixed and included a number of standard features, when in fact, Defendants charged consumer purchasers additional monies for items that were standard or were represented as standard by the Defendants.

177.    Such items that were standard or were represented as standard included, but are not limited to, those items listed in paragraph 168, above.

178.    Defendants' aforesaid conduct created a likelihood of confusion or of misunderstanding, in that one or more purchasers could be or were led to believe, that the homes they had bought included certain standard features for a predetermined price, when it did not, and was a deceptive trade practice in violation of 6 *Del. C.* §2532(12).

179.    Defendants' aforesaid conduct was willful in that they knew or should have

known such conduct was of the nature prohibited by 6 Del. C. §2532(12).

## V. RELIEF

WHEREFORE, the State requests that This Court grant the following relief:

A.    Enter judgment in favor of the State of Delaware and as against each Defendant, jointly and severally, on each count of the complaint;

B.    Order each Defendant to separately pay a civil penalty in an amount of up to $10,000 for each violation of 6 *Del. C.* §2513;

C.    Order each Defendant to separately pay a civil penalty in an amount of up to $10,000 for each violation of 6 *Del. C.* §2532;

D.    Order all Defendants to pay restitution and/or damages to all affected consumer victims for each and every violation of 6 *Del. C.* §2513 or 6 *Del. C.* §2532;

E.    Grant the State, pursuant to 29 *Del. C.* §2517(c)(2), its costs of investigation and attorney's fees;

F.    Award prejudgment and postjudgment interest upon all monies awarded to the State and to consumers as a result of this action; and

G.    Grant such further relief as This Court deems just and appropriate.

DEPARTMENT OF JUSTICE

Olha N.M. Rybakoff (I.D. #2337) •
Richard W. Hubbard (I.D. #2442)
Patricia A. Dailey (I.D. #2422)
Deputy Attorneys General
Fraud and Consumer Protection Division
820 North French Street, 5th Floor
Wilmington, DE 19801
(302) 577-8600
Attorneys for Plaintiff

DATED: September 20, 1999

35