**Commercial Umbrella Declarations**

 GENERAL ACCIDENT INSURANCE

436 Walnut Street
Philadelphia, PA 19105-1109

CUB

**This policy is issued by the company designated below by the letter X:**

| [X] General Accident Insurance Company of America 1 | [ ] Potomac Insurance Company of Illinois 2 | [ ] The Camden Fire Insurance Association 3 |
|---|---|---|

Policy number                                                                    Renewal of number
**CUB** 0167862-00                                                              NEW

**Item 1**

Named Insured and address (no., street, town, county, state, zip code)

**Wellington Homes, LLC
(See Named Insured Endorsement)
1601 Concord Pike, Suite 27
Wilmington, New Castle County, DE   19803**

Form of business
[ ] Individual       [ ] Partnership       [ ] Joint venture
[X] Organization (other than Partnership or Joint venture)
Branch Office or General Agent        **Corporation**
**Harrisburg Branch**
Agent name
**J.A. Montgomery Insurance**
Agent code
**427867**

Business description    **Residential Home Builder**

**Item 2**

This policy period
is from __10-11-98__ to __10-11-99__ 12:01 a.m. Standard Time
at your mailing address

In return for the payment of the Premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

**Item 3  Limits of insurance and S.I.R.**

General aggregate limit (other than products-completed operations or Automobile Hazard)        $ __2,000,000__     Each occurrence limit $ __2,000,000__

Products-completed operations aggregate limit        $ __2,000,000__     Self Insured Retention $ __-0-__

**Item 4**

This is an occurrence __X__ or claims made ____ policy. If this is a claims made policy, this insurance does not apply to "bodily injury" or "property damage," subject to the claims made provisions of this policy, which occurs before the Retroactive Date shown here: _____
(Enter Date or "None" if no Retroactive Date applies)

**Item 5**

Location of all premises you own, rent or occupy: (enter "same" if same as above)

**See Schedule of Locations**

**Item 6**

| Policy number, period, Insurer | | Applicable limits | |
|---|---|---|---|
| Employers Liability WC 0347215-00 Potomac Insurance Company of Illinois 10-11-98 to 10-11-99 | Bodily injury by Accident | $ 100,000 | each accident |
| | Bodily injury by Disease | $ 100,000 | each employee |
| | Bodily injury by Disease | $ 500,000 | policy limit |
| Commercial General Liability CPP 1211477-00 Potomac Insurance Company of Illinois 10-11-98 to 10-11-99 | General aggregate limits (other than products-completed operations) | $ 2,000,000 | |
| | Products-completed operations aggregate limit | $ 2,000,000 | |
| | Personal & advertising injury limit | $ 1,000,000 | |
| | Each occurrence limit | $ 1,000,000 | |
| | Fire damage limit, any one fire | $ 50,000 | |
| Automobile Liability    BA 0294647-00    10-11-98 to 10-11-99 Potomac Insurance Company of Illinois | Combined Single Limit per accident | $ 1,000,000 | |
| Other | | $ | |

**Item 7—Premium payable at inception**

Advance Premium $ __3,320.00__     Minimum Premium $ __3,320.00__     Policywriting Minimum $ __N/A__
Rating Basis    **Flat**                                                        Class Code No.     __99935__

Audit Period Annual unless otherwise indicated     [ ] Semi-Annual    [ ] Quarter    [ ] Month

Coverage Form __L3100 (09-94)__ and Endorsements attached to this Policy. Insert numbers and edition dates.
**L3240 (09-94), IL0237 (08-88), L3364 (04-97), L3225 (05-95), Named Insured Endorsement, Schedule of Locations**

This Declarations Page, together with the Coverage Form and Endorsements, if any issued to form a part thereof, completes the numbered Policy.

__10-27-98  Camp Hill, PA  PMc/1j__
Date and place of issue                                      Countersigned by (Authorized Agent)

-3102 Rev. 6.95

**BRANCH OFFICE OR GENERAL AGENT'S COPY**

 **General Accident Insurance** **ENDORSEMENT**

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company.**

Endorsement No. _____

Issued by:   **General Accident Insurance Company of America**

| Place of issue | | Date of issue | |
|---|---|---|---|
| Camp Hill, PA | | 10-27-98 | |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| Hour   12:01   A.M. | 10 | 11 | 98 | CUB 0167862-00 |

Issued to

Wellington Homes, LLC

| State code | Agent code | Agent name |
|---|---|---|
| 07 | 427867 | J.A. Montgomery Insurance |

**The above information is not required when this endorsement is issued with the policy.**

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten entry below.

<u>NAMED INSURED ENDORSEMENT</u>

Wellington Homes, LLC
Wellington Homes, Inc.
Joal Enterprises, Inc.
Vietri Realty, Inc.
Vietri Management, Inc.
Hodev, Inc.
397 Properties, L.L.C.
Bear Cap Ventures, L.L.C.
Bohemia Hall, Inc.
Fox Run, Inc.
Boothhurst Enterprises, L.L.C.;
Wilmington Hospitality, L.L.C.

*ALBERT A. VIETRI*
*TINA MARIE   VIETRI*
*TONY   VIETRI.*
*JOSEPH  L. CAPANO II.*
*JOSEPH  L. CAPANO*

*Mary & Matthew Carozzo*
*Valley Point Maintenance Association*

| Additional premium | Return premium |
|---|---|
| $ | $ |

Signature of authorized representative

G-1804 A Rev.6.96

 **General Accident Insurance**

# ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company.**

Endorsement No. _____

Issued by:   General Accident Insurance Company of America

| Place of issue | Date of issue |
|---|---|
| Camp Hill, PA | 10-27-98 |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| Hour   12:01   A.M. | 10 | 11 | 98 | CUB 0167862-00 |

Issued to

Wellington Homes, LLC

| State code | Agent code | Agent name |
|---|---|---|
| 07 | 427867 | J.A. Montgomery Insurance |

**The above information is not required when this endorsement is issued with the policy.**

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten entry below.

### SCHEDULE OF LOCATIONS

1)  1601 Concord Pike, Suite 27, Wilmington, DE  19803

2)  Valley Point, Hockessin, New Castle County, DE  19707

3)  Wyndom, Hockessin, DE  19707

4)  Wawaset Town Court, Wilmington, DE  19801

5)  Boothhurst, New Castle, DE  19720

6)  Chapman Woods, Newark, DE  19711

7)  Lots 63, 64, 65, 45, 50, 51, 53, 55,
    74 Middletown Village, Middletown, DE  19709

8)  Lea Era Farms, Middletown, DE  19709

9)  Llangollen, New Castle, DE  19720

10)  1442 Bohemia Mill Road, Middletown, DE  19709

| Additional premium | Return premium |
|---|---|
| $_____ | $_____ |

Signature of authorized representative

_____

G-1804 A Rev.6.96

 

INTERLINE
IL 02 37 04 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DELAWARE CHANGES – TERMINATION PROVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA POLICY
COMMERCIAL CRIME – SAFE DEPOSITORY LIABILITY COVERAGE FORM M
COMMERCIAL CRIME – LIABILITY FOR GUESTS' PROPERTY PREMISES COVERAGE FORM L
COMMERCIAL CRIME – LIABILITY FOR GUESTS' PROPERTY SAFE DEPOSIT BOX COVERAGE
FORM K
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. With respect to the:

Farm Property-Farm Dwellings, Appurtenant Structures and Household Personal Property Coverage Form; and Commercial Property Coverage Part;

if the policy covers a building that contains no more than 4 dwelling units, one of which is the insured's principal place of residence, or covers the insured's household personal property in a residential building, the following applies:

1. Paragraph 2. of the CANCELLATION Common Policy Condition is replaced by the following:

    2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation along with the reasons for cancellation at least:

        a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        b. 30 days before the effective date of cancellation if we cancel for any other reason.

    After coverage has been in effect for more than 60 days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

    (1) Nonpayment of premium;

    (2) Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

    (3) Discovery of willful or reckless acts or omissions on your part that increase any hazard insured against;

    (4) The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

    (5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

    (6) A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the Delaware insurance laws; or

    (7) Real property taxes owing on the insured property have been delinquent for two or more years and continue delinquent at the time notice of cancellation is issued.

 Copyright, Insurance Services Office, Inc., 1997 □

# Commercial Umbrella Policy

**CGU**

## Quick Reference

Declarations Page

    Named Insured and Mailing Address

    Description of Business

    Policy Period

    Limits of Insurance and Coverage

    Business Location

    Schedule of Underlying Insurance

    Forms and Endorsements applying to the Policy at time of issue.

**Section I** - Coverage

    Coverage A - Excess Follow Form Liability . . . . . . . . . . . . . . . . . . . . . . . . . . page 1

    Coverage B – Umbrella Liability Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . page 2

    Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 2

    Defense and Supplementary Payments . . . . . . . . . . . . . . . . . . . . . . . . . . page 11

**Section II** – Who is An Insured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 12

**Section III** - Limits of Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 13

**Section IV** - Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 14

**Section V** - Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 18

Endorsements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . if any

L-3240 9.95


# CGU Commercial Umbrella Policy

**This is an occurrence form**

**Introduction**    This policy contains two insuring agreements:

Coverage A. Excess Follow Form Liability adds excess limits over scheduled underlying coverages; and

Coverage B. Umbrella Liability adds a measure of broadening of coverage against many of the gaps in the underlying coverages.

These separate coverages share the Limits of Insurance.

**Contract**    Various provisions in this policy restrict coverage. Please read this entire policy and any **underlying insurance** carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **you** and **your** refer to the Named Insured shown in the Declarations. The words **we, us** and **our** refer to the Company shown in the Declarations providing this insurance.

The words **insured, an insured** and **the insured** mean any person or organization qualifying as such under Section II — Who Is An Insured. **Named Insured** means only the **insured** named in the Declarations.

Important words and phrases have special meaning and are defined in Section V — Definitions.

**Insuring Agreement**    We, in return for the payment of the premium and in reliance upon your statements, agree with you as follows:

---

**Section I —**    **Coverage A - Excess Follow Form Liability**
**Coverages**    We will pay on behalf of the **insured** those sums, in excess of the total amount payable under the terms of any **underlying insurance** stated in the Declarations, that the **insured** becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury.**

This coverage is subject to the same terms, conditions, agreements, exclusions and definitions as any **underlying insurance** stated in the Declarations except, when they are inconsistent with provisions of this coverage in which case the provisions of this coverage will apply.

The amount we will pay for **Ultimate Net Loss** is limited as described in Section III— Limits of Insurance.

We have no obligation under this coverage with respect to any claim or **suit** settled without our consent.

Where we are not permitted by law to pay on behalf of the **insured,** we will indemnify the **insured** for **Ultimate Net Loss** sustained under this coverage.

### Coverage B — Umbrella Liability Insurance

We will pay on behalf of the **insured** those sums in excess of the **Self Insured Retention** or the total amount payable by **other insurance,** whichever is greater, that the **insured** becomes legally obligated to pay as damages for liability imposed on the **insured** by law or assigned under an **Insured Contract.**

This coverage applies only to **bodily injury** or **property damage** caused by an **occurrence** which occurs during the policy period or **personal injury** or **advertising injury** caused by an **offense** committed during the policy period. The **occurrence** or **offense** must take place in the **coverage territory.**

The amount we will pay for **Ultimate Net Loss** is limited as described in Section III— Limits of Insurance.

Coverage B will not apply to any loss, claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the limits of insurance of **underlying insurance.**

We have no obligation under this coverage with respect to any claim or **suit** settled without our consent.

Where we are not permitted by law to pay on behalf of the **insured,** we will indemnify the **insured** for **Ultimate Net Loss** sustained under this coverage.

| | |
|---|---|
| **Exclusions** | **1.  Applicable to Coverages A & B** |

*This insurance does not apply to:*

**a.  Asbestos**

**Bodily injury** or **property damage** arising out of or alleged to have arisen out of:

(1) Exposure to asbestos, asbestos fiber, or any material containing asbestos or asbestos products; or

(2) The removal of asbestos, asbestos fiber, or any material containing asbestos products, including, without limitation,

(a) The costs of asbestos removal; or

(b) **Property damage** in the course of effecting such removal.

We shall not be obligated to investigate or defend the **insured** against any claim for any liability described above which is asserted against any **insured** or to pay any judgment entered against any **insured** for such liability.

**b.  Automobile First Party Coverage**

Liability imposed on the **insured** or the **insured's** insurer, under any of the following laws:

(1) Any uninsured motorist, underinsured motorist, or automobile no-fault or first party bodily injury or property damage law, or any similar law.

**c.  Employment Practices**

(1) **Bodily injury** and **personal injury** arising out of coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination, directly or indirectly related to the employment or prospective employment of any person or persons by any **insured.**

(2) **Bodily injury** arising out of termination of employment of any person by an **insured.**

**d.  ERISA**

Any obligation of the **insured** under the Employee's Retirement Income Security Act (ERISA) of 1974 as now or hereafter amended.

**e.  Fellow Employee**

Any employee with respect to **bodily injury** to or the death of another employee of the same employer, injured in the course of their employment or duty to indemnify another for such injury.

**f. Nuclear Energy Liability Exclusion (Broad Form)**

    (1) Under any Liability Coverage to **bodily injury** or **property damage:**

        a. With respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but its termination upon exhaustion of its limit of liability; or

        b. Resulting from the **hazardous properties** of nuclear **material** and with respect to which (1) person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is or had this policy not been issued would be, entitled to from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

    (2) Under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operations of a **nuclear facility** by any person or organization.

    (3) Under any Liability Coverage to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material,** if:

        a. The **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of an **insured** or (2) has been discharged or dispersed therefrom;

        b. The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured;** or

        c. The **bodily injury** or **property damage** arises out of furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility,** but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion applies (3) only to **property damage** to such **nuclear facility** and any property thereat.

As used in this exclusion:

**Hazardous properties** include radioactive, toxic or explosive properties;

**Nuclear material** means **source material, special nuclear material** or **by-product material;**

**Source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Act of 1954 or in any law amendatory thereof;

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

**Waste** means any waste material (a) containing **by-product materials** other than the tailings or wastes produced by the extration or concentration of uranium or thorium from any ore processed primarily for its **sourced material** content and (b) resulting from the operation by any person or organization or any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**

**Nuclear facility** means;

(a) Any **nuclear reactor;**

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel** or (3) handling, processing or packaging **waste.**

(c) Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or consists more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal or **waste;** and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Property damage** includes all forms of radioactive contamination of property.

g. **Statutory Obligations to Employees**

Liability imposed on the **insured** or the **insured's** insurer under any of the following laws:

(1) Any workers' compensation, unemployment compensation, or disability benefits law or any similar law.

h. **War**

**Bodily injury** or **property damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, revolution or acts of terrorism. This exclusion applies only to liability assumed under a contract or agreement.

### 2. Applicable to Coverage A only

This insurance does not apply to:

**a. Pollution**

(1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**

(a) That are, or that are contained in any property that is:

(i) Being moved from the place where such property or **pollutants** are accepted by an **insured** for movement into or onto the covered **auto;**

(ii) Being transported or towed by the covered **auto;**

(iii) Otherwise in the course of transit by or on behalf of an **insured;**

(iv) Being stored, disposed of, treated or processed in or upon the covered **auto;** or

(v) Being moved from the covered **auto** to the place where such property or **pollutants** are finally delivered, disposed of or abandoned by an **insured;**

(b) At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any **insured;**

(c) At or from any premises, site or location, which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

(d) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

(e) At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such **insured, contractor** or sub-contractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of **pollutants.**

Paragraphs (1)(a)(iv) and (1)(b) through (1)(e) above do not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered auto or its parts, if the **pollutants** escape, seep or migrate or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such **pollutants.**

Paragraphs (1)(b) and (1)(e)(i) above do not apply to **pollutants** not in or upon the covered **auto** if:

(a) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of the covered **auto;**

(b) The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage; and

(c) The **bodily injury** or **property damage** is not otherwise excluded under paragraph (1)(a) of this exclusion.

Paragraphs (1)(b) and (1)(e)(i) above do not apply to **bodily injury** or **property damage** arising out of the heat, smoke or fumes from a **hostile fire.**

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or **suit** by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

As used in this exclusion:

(1) **Hostile fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be; and

(2) **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

b.  **Underlying Insurance Exclusions**

Any liability excluded by **underlying insurance.**

3.  **Applicable to Coverage B only**

This insurance does not apply to:

a.  **Advertising Injury**

Arising out of:

(1) Breach of contract, other than unauthorized appropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting;

(5) Infringement of registered trade mark, service mark, or trade name, other than titles or slogans, by use on or in connection with goods or services sold, offered for sale or advertised.

b. **Aircraft**

**Bodily injury** or **property damage** arising out of the ownership, entrustment to others, maintenance, operation, use, **loading or unloading** of any aircraft owned by **insured** or chartered by or on behalf of an **insured** without crew.

c. **Alcoholic Beverages**

Any **bodily injury** or **property damage** arising out of an **insured's** manufacturing, distributing, selling, or serving of alcoholic beverages or to an **insured's** liability as an owner or lessor of premises used for selling or serving alcoholic beverages.

d. **Autos**

To the ownership, entrustment, maintenance, operation, use, **loading or unloading** of **autos** within the United States of America, including its possessions, territories and Canada or while **autos** are being transported between these places.

e. **Coverage A**

(1) Any damages or expenses covered under Coverage A.

(2) Any damages which would have been covered under Coverage A but for the actual or alleged bankruptcy or insolvency of an **underlying insurer** or the termination of the **underlying policy.**

f. **Damage To Your Products or Works**

To **property damage** to or loss of use of:

(1) **Your products** arising out of it or any part of it; or

(2) **Your work** arising out of it, any part of it or out of materials, parts or equipment furnished with it and included in the **products-completed operations hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

g. **Employers' Liability**

(1) To any liability of the **insured** arising out of injury of an employee in the course of employment by you or any duty to indemnify another for such injury; and

(2) To any liability of the **insured** arising out of injury of the spouse, child, parent, brother, or sister of the employee as a consequence of (1) above;

whether you may be liable as an employer or in any other capacity. Also this exclusion applies to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**h. Impaired Property**

**Property damage** to **impaired property** or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy, or dangerous condition in **your product** or **your work;** or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after if has been put to its intended use.

**i. Intended Acts and/or Injury**

**Bodily injury** or **property damage** which results from an act that is intended by the **insured** or can be expected from the standpoint of a reasonable person to cause **bodily injury** or **property damage,** even if the **bodily injury** or **property damage** is of a different degree or type than actually intended or expected.

This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

**j. Personal Injury**

(1) Arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity; or

(2) Arising out of oral or written publication of material first published before the beginning of the policy period; or

(3) Arising out of the willful violation of penal statute or ordinance committed by or with the consent of the **insured;** or

(4) For which the **insured** has assumed liability in a contract or agreement, except liability for damages that the **insured** would have in the absence of the contract or agreement.

**k. Pollution**

(1) Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants;**

(2) Any cost or expense arising out of any:

(a) Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of **pollutants.**

(b) Claim or **suit** by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

As used in this exclusion, **pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

This exclusion applies whether or not the pollution was sudden, accidental, gradual, intended, unintended, expected, unexpected, preventable or not preventable.

l.  **Product Recall**

Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of **Your product, Your work,** or **Impaired property,** if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

m.  **Professional Liability**

**Bodily injury** arising out of rendering or failure to render professional services.

n.  **Property Damage**

**Property damage** to:

(1) Property you own;

(2) Premises you sell, give away or abandon; if the **property damage** arises out of any part of those premises;

(3) That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations;

(4) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it; or

(5) The property of one **insured** in the care, custody, or control of another **insured.**

Paragraph (4) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

p.  **Watercraft**

**Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned to or on behalf of any **insured.** Use includes operation and **loading or unloading.**

**Defense and Supplementary Payments — Coverage A & B**

1.  We have the right and duty to investigate, settle or defend any claim or **suit** against the **insured** seeking damages payable under this policy:

    a.  under Coverage A, when the applicable limit of **underlying insurance** has been exhausted by payment of judgments or settlements; or

    b.  under Coverage B, when damages are sought for **bodily injury, property damage, personal injury** or **advertising injury** to which no **underlying insurance** or other **insurance** applies.

    We also have the right, but not the duty, to investigate, settle or defend any other claim or suit that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

2.  Both our right and duty to defend any existing or future suits end when we have used up the applicable Limit of Insurance in payment of judgments or settlements under Coverages A or B.

3.  When we have the duty to defend, we will pay for:

    a.  All expenses we incur.

    b.  Up to $250 for the cost of bail bonds required because of the accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

    c.  The cost of bonds to release attachments, but only for the bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

    d.  All reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of any claim or **suit** including actual loss of earnings up to $250 a day because of time off from work.

    e.  All costs taxed against the **insured** in any **suit** we defend.

    f.  **Pre-judgment interest** awarded against the **insured** on the part of judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a claim or **suit** we will not pay for any **pre-judgment interest** imposed after the date of such offer.

    g.  All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

    Payments under this section of the policy will not reduce the Limit of Insurance.

| | |
|---|---|
| **Section II —**<br>**Who Is**<br>**An Insured** | For Coverages A and B, the following are **insureds.**<br><br>**1.** The named insured stated in Item **I** of the Declarations. |

For Coverage A, the following are **insureds.**

**1.** Any person or organization who is an **insured** under any policy of **underlying insurance.** The coverage afforded such **insureds** under this policy will not be broader than the **underlying insurance** except for this policy's Limit of Insurance.

For Coverage B, the following are **insureds.**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are **insureds,** but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an **insured.** Your members, your partners, and their spouses are also **insureds,** but only with respect to the conduct of your business.

    **c.** An organization other than a partnership or joint venture, you are an **insured.** Your executive officers and directors are **insureds,** but only with respect to their duties as your officers or directors. Your stockholders are also **insureds,** but only with respect to their liability as stockholders.

**2.** Each of the following is also an **insured:**

    **a.** Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

    However, none of these employees is an **insured** for **bodily injury** or **personal injury** to you or to a co-employee while in the course of his or her employment.

    **b.** Any person (other than your employee) or any organization while acting as your real estate manager.

    **c.** Any person or organization having temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

    **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage does not apply to **bodily injury** or **property damage** that occurred before you acquired or formed the organization; and

   c. Coverage does not apply to **personal injury** or **advertising injury** arising out of an **offense** committed before you acquired or formed the organization.

No person or organization is an **insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

---

**Section III —**
**Limits of**
**Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay with respect to Coverage A and Coverage B regardless of the number of:

   a. **insureds;**

   b. claims made or **suits** brought; or

   c. persons or organizations making claims or bringing **suits.**

2. The amount of insurance stated as the General Aggregate Limit is the most we will pay for damages under Coverage A and Coverage B, other than:

   a. Damages because of **bodily injury** and **property damage** included in the **products-completed operations hazard** or the **automobile hazard;** and

   b. Damages because of **personal injury** and **advertising injury.**

   Each payment we make for such damages reduces, by the amount of the payment, the General Aggregate Limit. This reduced limit will then be the amount of insurance available for further damages subject to the General Aggregate Limit.

3. The amount of insurance stated as the Products-Completed Aggregate Limit is the most we will pay under Coverage A and Coverage B for damages because of **bodily injury** and **property damage** included in the products-completed operations hazard.

   Each payment we make for such damages reduces by the amount of the payment the Products-Completed Operations Aggregate Limit. This reduced limit will then be the Amount of Insurance available for further damages subject to the Products-Completed Operations Aggregate Limit.

4.  Subject to 2. or 3., above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages under Coverage A and Coverage B because of all damages arising out of any one **occurrence.**

5.  The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

---

**Section IV —**
**Conditions**

We have no duty to provide coverage under this policy unless you and any other involved **insured** have fully complied with the Conditions contained in this policy.

1.  **Appeals**

    In the event the **insured** or any **underlying insurer** elects not to appeal a judgment which exceeds the Retained Limit, we may elect to do so. We shall be liable, in addition to the Limits of Insurance, for all costs, taxes, expenses incurred and interest on appeals in connection with our right to defend the **insured** under Defense and Supplementary Payments of this policy.

2.  **Assignment**

    Assignment of interest under this policy shall not bind us unless or until our consent is endorsed hereon.

3.  **Bankruptcy**

    Bankruptcy, insolvency or receivership of the **insured,** the **insured's** estate or any **underlying insurer** will not relieve us of our obligations under this policy; but with regard to bankruptcy, insolvency or receivership of any **underlying insurer** this policy shall not apply as a replacement of such bankrupt or insolvent **underlying insurer** and our Limits of Insurance will apply in excess of the required Limits of Insurance stated in the Declarations of this policy.

4.  **Duties in the Event of Occurence, Claim or Suit**

    a.  You must see to it that we are notified promptly of an **occurrence** or **offense** which may result in a claim. Notice should include:

        (1) How, when and where the **occurrence** or **offense** took place; and

        (2) The names and addresses on any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the **occurrence.**

**b.** If a claim is made or **suit** is brought against any **insured,** you must see to it that we receive prompt written notice of the claim or **suit.**

**c.** You and any other involved **insured** must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit;**

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the **suit;** and

   **(4)** Assist us upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

**d.** No **insured** will, except at that **insured's** own cost, voluntarily make payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. Legal Action Against Us.**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a **suit** asking for damages from an **insured;** or

**b.** To sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **insured** obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

**6. Maintenance of Underlying Insurance**

You must keep the **underlying insurance** described in the Schedule of Underlying Insurance in full force and effect during the period of this policy, with the same terms, conditions and limits of liability that were in effect when this policy was issued to you, except for reductions in limits of liability of the **underlying insurance** due solely to the payment of claims by any **underlying insurer.** Any renewal or replacement of any **underlying insurance** must not be more restrictive in terms or conditions, nor with limits of liability less than the limits of liability of the **underlying insurance** being renewed or replaced.

You must inform us in writing within 30 days of any cancellation of any **underlying insurance** or replacement of any **underlying insurance** by the **underlying insurer** or any other insurer.

Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

You must notify us immediately in writing of any changes to the terms of any **underlying insurance** policies. We may make adjustment of premium charges under this policy from the effective date of such changes to the terms of any **underlying insurance** policies.

### 7. Changes

This policy contains all agreements between you and us concerning the insurance afforded. No change can be made in the terms of this policy except with our consent. The terms of this policy can be amended or waived only by endorsement issued by us and made a part of this policy.

### 8. Other Insurance

If other valid and collectible insurance is available to the **insured** for the **Ultimate Net Loss** we cover under this policy, our obligations under this policy are limited as follows:

**a. Excess Insurance.**

This policy is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limits of Insurance.

We will pay only our share of the amount of **Ultimate Net Loss,** if any, that exceeds the sum of :

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductibles and self- insured amounts under this or any other insurance.

### 9. Premium and Premium Audit

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first **named insured.** If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first **named insured.**

c. **The first named insured** must keep records of the information we need for premium computation, and send us copies at such times as we may request.

d. In no event will the premium for this policy be less than:

(1) The Minimum Premium shown in the Declarations; or

(2) The pro/rata earned Minimum Premium if this policy is cancelled; or

(3) The Policywriting Minimum Premium if one is shown in the Declarations.

**10. Inspection and Surveys**

We have the right but we are not obligated to:

a. Make inspections and surveys at anytime;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of the workers or the public. We do not warrant that conditions:

a. are safe or healthful; or

b. comply with laws, regulations, codes or standards.

**11. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations and any subsequent notice relating to underlying insurance are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**12. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first **named insured,** this insurance applies:

a. As if each **named insured** were the only **named insured;** and

b. **Separately to each insured** against whom claim is made or suit is brought.

**3. Transfer of Rights of Recovery Against Others to Us**

If the **insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **insured,** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them.

Any recoveries shall be applied first to reimburse any interests (including the **insured**) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the **insured**) as to which the policy is excess, as are entitled to the residue, if any.

When we assist in pursuit of the **insured's** right of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings. If there is a recovery as a result of proceedings instituted solely at our request, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

### 14. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first **named insured** shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 15. Conformity With Statute

The terms of this policy and forms attached hereto which conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

---

**Section V —**
**Definitions**
**Applicable to Coverages A & B**
In this policy words and phrases appearing in bold-face type have defined meanings

1. **Excess Insurance** means insurance specifically purchased to apply in excess of any other insurance policy's limit of liability.

2. **Other insurance** means an insurance policy affording coverage that this policy also affords. **Other insurance** includes any type of self-insurance or other mechanism by which an **insured** arranges for funding of legal liabilities.

   **Other insurance** does not include **underlying insurance** or insurance purchased to apply specifically in excess of this policy.

3. **Retained limit** means the greater of:

   a. That amount of **Underlying Insurance** applicable to any claim or **suit** whether such **Underlying Insurance** is collectible or not; or

   b. The amount of **Self Insured Retention** as shown in the Declaration of this policy.

4. **Self Insured Retention** means the dollar amount specified in the Declarations.

5. **Suit** means a civil proceeding in which damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies are alleged. **Suit** includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

6. **Ultimate Net Loss** means the total amount of damages for which the **insured** is legally liable in payment of **bodily injury, property damage, personal injury** or **advertising injury. Ultimate Net Loss** may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing. **Ultimate Net Loss** shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of **Ultimate Net Loss** shall not include any expense incurred by any **insured,** by us or by any **Underlying Insurer.**

7. **Underlying Insurance** means the coverage(s) afforded under insurance policies designated in the Schedule of Underlying Insurance on the Declarations page of this policy.

8. **Underlying Insurer** means any company issuing any policy of **Underlying Insurance.**

---

**Applicable to Coverage B only**

1. **Advertising injury** means injury arising out of one or more of the following offenses:

    **a.** Oral or written publication of material that slanders or libels a person or organization's goods, products or services;

    **b.** Oral or written publication of material that violates a person's right of privacy;

    **c.** Misappropriation of advertising ideas or style of doing of business; or

    **d.** Infringement of copyright, title or slogan.

2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads; including any attached machinery or equipment. But **auto** does not include **mobile equipment.**

3. **Automobile Hazard** means liability arising out of the ownership, maintenance, use, or entrustment to others of any **auto.** Use includes operations and **loading or unloading.**

4. **Bodily injury** means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

5. **Coverage territory** means anywhere in the world if the insured's responsibility to pay damages is determined in a **suit** on the merits in the United States of America (including its territories and possessions), Puerto Rico or Canada; or, in a settlement we agree to.

6. **Impaired property** means tangible property, other than **your product** or **your work** that cannot be used or is less useful because:

   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of **your product** or **your work;** or

   b. Your fulfilling the terms of the contract or agreement.

7. **Insured contract** means:

   a. A lease of premises;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

   f. That part of any contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   An **insured contract** does not include that part of any contract or agreement:

   a. That indemnifies any person or organization for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

   b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    c. Under which the **insured,** if an architect, engineer or surveyor assumes liability for an injury or damage arising out of the **insured's** *rendering or failing to render professional services, including those listed in b. above and supervisory, inspection or engineering services;* or

    d. That pertains to the loan, lease or rental of an **auto** *to you or any of your employees, if the* **auto** *is loaned, leased, or rented with driver;* or

    e. That holds a person or organization engaged in the business of transporting property by **auto** *for hire harmless for your use of a covered* **auto** *over a route or territory that person or organization is authorized to serve by public authority.*

**8. Loading or unloading** means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto;**

    b. While it is in or on aircraft, watercraft or auto; or

    c. While it is being moved from an aircraft, watercraft *or* **auto** to the place where it is finally delivered;

but **loading and unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto.**

**9. Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered autos:

    (1) Equipment designed primarily for:

        (a) Snow removal;

(b) Road maintenance, but not construction or resurfacing;

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air-compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

10. **Occurrence** means an accident resulting in **bodily injury** or **property damage,** including continuous or repeated exposure to substantially the same general harmful conditions.

11. **Offense** means any of the offenses included in the definitions of **advertising injury** or **personal injury.**

12. **Personal injury** means injury, other than **bodily injury,** arising out of one or more of the following offenses;

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

13. **Pre-judgment interest** means interest added to a settlement, verdict, award or judgment based on the amount of time consumed prior to the settlement, verdict, award or judgment.

14. a. **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of your product or your work except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. **Your work** will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   c. This hazard does not include **bodily injury** or **property damage** arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **loading** or **unloading** of it;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

**15. Property damage** means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

**16. Trailer** includes semitrailer.

**17. Your product** means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you acquired; and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product,** and

   b. The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

**18. Your work** means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work, and

   b. The providing of or failure to provide warnings or instructions.

GU 311
(8-8

IL 02 37  08 88

# DELAWARE CHANGES - TERMINATION PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME--SAFE DEPOSITORY LIABILITY COVERAGE FORM M**
**COMMERCIAL CRIME--LIABILITY FOR GUESTS' PROPERTY PREMISES COVERAGE FORM L**
**COMMERCIAL CRIME--LIABILITY FOR GUESTS' PROPERTY SAFE DEPOSIT BOX COVERAGE FORM K**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

A. With respect to the:

FARM PROPERTY COVERAGE FORM; and COMMERCIAL PROPERTY COVERAGE PART;

if the policy covers a building that contains no more than 4 dwelling units, one of which is the insured's principal place of residence, or covers the insured's household personal property in a residential building, the following applies:

1. Paragraph 2. of the CANCELLATION Common Policy Condition is replaced by the following:

    2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation along with the reasons for cancellation at least:

        a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        b. 30 days before the effective date of cancellation if we cancel for any other reason.

    After coverage has been in effect for more than 60 days or after the effective date of renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

        (1) Nonpayment of premium;

        (2) Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

        (3) Discovery of willful or reckless acts or omissions on your part that increase any hazard insured against;

        (4) The occurrence of a change in the risk that substantially increases any hazard insured against; after insurance coverage has been issued or renewed;

        (5) A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any covered property

or its occupancy that substantially increase any hazard insured against;

        (6) A determination by the Insurance Commissioner that the continuation of the polic would place us in violation of the Delawar insurance laws; or

        (7) Real property taxes owing on the insure property have been delinquent for two c more years and continue delinquent at th time notice of cancellation is issued.

2. The following Condition is added:

    NONRENEWAL

        a. If we decide not to renew this policy, we will ma or deliver written notice of nonrenewal to the firs Named Insured, at least 30 days before th expiration date, or the anniversary date if this a policy written for a term of more than one yea or with no fixed expiration date.

        b. Any notice of nonrenewal will include th reason(s) for nonrenewal and will be mailed c delivered to the first Named Insured at the las mailing address known to us.

        c. If notice is mailed, proof of mailing will be suff cient proof of notice.

3. If CANCELLATION CHANGES CP 02 99 is attache to the Commercial Property Coverage Part, Paragrap E.2. of that form is replaced by the following:

        2. Pay property taxes that are owing and have bee outstanding for more than two years following th date due, except that this provision will not appl where you are in a bona fide dispute with th taxing authority regarding payment of such taxes

B. With respect to the:

COMMERCIAL CRIME - SAFE DEPOSITORY LIABILIT COVERAGE FORM M;

COMMERCIAL CRIME - LIABILITY FOR GUESTS PROPERTY PREMISES COVERAGE FORM L;

COMMERCIAL CRIME - LIABILITY FOR GUESTS PROPERTY SAFE DEPOSIT BOX COVERAGE FORM K;

| Form No: | IL 02 3: |
|---|---|
|  | 08 88 |
| Page 2 of 2 | |

COMMERCIAL GENERAL LIABILITY COVERAGE FORM;

COMMERCIAL PROPERTY - LEGAL LIABILITY COVERAGE FORM;

COMMERCIAL PROPERTY - MORTGAGE HOLDER'S ERRORS AND OMISSIONS COVERAGE FORM;

FARM LIABILITY COVERAGE FORM;

LIQUOR LIABILITY COVERAGE FORM;

POLLUTION LIABILITY COVERAGE FORM; and

PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM;

the following Condition is added and supersedes any other condition to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail c deliver written notice of nonrenewal to the first Name Insured, at least 60 days before the expiration date or the anniversary date if this is a policy written for term of more than one year or with no fixed expiratio date.

2. Any notice of nonrenewal will be mailed or delivere to the first Named Insured at the last mailing addres known to us.

3. If notice of nonrenewal is mailed, it will be sent b certified mail.

**GA\\** GENERAL
ACCIDENT
INSURANCE

# ENDORSEMENT

This Endorsement Changes The Policy. Please Read It Carefully.

## Contractors Endorsement

This endorsement modifies insurance provided under the following:

**Commercial Umbrella Policy**

Under Exclusions, Applicable to Coverage A and Coverage B, the following exclusion is added:

Contractors

1. any project insured under a wrap-up plan; or

2. any liability arising out of any act, error, omission or mistake committed by or on behalf of the **insured** as an engineer or architect.

Under Exclusions, Applicable to Coverage B Only, the following exclusion is added:

Contractors

1. property occupied by or rented to the **insured;**

2. property used by the **insured;**

3. personal property in the care, custody, or control or the **insured** or as to which the **insured** is for any purpose exercising physical control;

4. **property damage** to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, or pile driving: and property damage to any other property at anytime resulting therefrom;

5. any liability arising out of:

   a. blasting or explosion (other than the explosion of air or steam vessels) of piping under pressure, prime movers, machinery or power transmitting equipment;

   b. the collapse of or structural injury to any building or structure due to grading of land, excavating, burrowing, filling, back-filling, tunneling, piledriving, cofferdam or caisson work, or moving, shoring, underpinning; raising or demolition of any building or structure or removal or rebuilding of any structural support thereof;

6. liability assumed by the **insured** under contract or agreement, including an **insured contract.**

All other terms and conditions remain unchanged.

L-3225 5.95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES  JAN 0 4 1999

K.U.

Policy Change
Number  1

| POLICY NUMBER<br><br>CUB 0167862-00 | POLICY CHANGES<br>EFFECTIVE<br>11/25/98 | COMPANY<br><br>GENERAL ACCIDENT INS. CO. OF<br>AMERICA |
|---|---|---|
| NAMED INSURED<br>WELLINGTON HOMES, LLC ET AL | | AUTHORIZED REPRESENTATIVE<br>J.A. MONTGOMERY INC.<br>427867<br>PMc/VK    12/28/98 |

COVERAGE PARTS AFFECTED

ITEM 1

CHANGES

IT IS AGREED THAT THE POLICY IS AMENDED AS FOLLOWS:

MARY & MATTHEW CAROZZO AND VALLEY POINT MAINTENANCE ASSOCIATION
ARE ADDED AS NAMED INSUREDS.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

**GA** General Accident Insurance                    **ENDORSEMENT**

Not Valid Unless Signed By A Duly Authorized Representative Of The Company

Endorsement number ___#12___

Issued by:   General Accident Ins. Co.

Place of issue   Mt. Laurel NJ /ym          Date of issue
                                            5-14-99

| Endorsement effective (standard time) Month | Day | Year | Amending policy no. |
|---|---|---|---|
| Hour_____M._____| 4 | 5 | 99 | CUB 0167862-00 |

Issued to   Wellington Homes Inc.

| State code | Agent code | Agent name |
|---|---|---|
| 07 | 427867 | J A Montgomery |

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten entry below.

It is hereby understood and agreed that the policy is amended as follows:

Amend Insureds name to read:

Wellington Homes, LLC
Wellington Homes, Inc.
Joal Enterprises Inc.
Vietri REalty Inc.
Vietri Management Inc.
Hodev, Inc.
397 Properties, LLC
Bohemia Hall, Inc.
Fox Run, Inc.
Boothhurst Enterprises LLC
Wilmington Hospitality LLC
Mary & Mathew Carozzo
Valley Point Maintenance Assoc.
Llangollen Properties Inc.

Additional premium                    Return premium

$_____   $_____
Signature of authorized representative

_____

G-1881 Rev.6.96

 **General Accident Insurance**

 # ENDORSEMENT

Not Valid Unless Signed By A Duly Authorized Representative Of The Company

Endorsement number _____3_____

Issued by: General Accident Insurance Company of America

Place of issue                                    Date of issue
_____Mount Laurel, NJ_____                        |_____9-20-99_____

Endorsement effective (standard time) Month    Day    Year    Amending policy no.
Hour_____M.____|___4___|___1___|___99___|___CUB 0167862-00_____

Issued to
_____Wellington Homes, LLC_____

State code    Agent code    Agent name
___37_____|___427867___|___J.A. Montgomery Insurance_____

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten entry below.

It is hereby understood & agreed that the policy is amended as follows:

1.  Loc#11- Airport Road & I-95,
            New Castle, DE  19720
    is added to the policy.

2.  No change in premium.

Additional premium                      Return premium

$_____      $_____
Signature of authorized representative

G-1881 Rev.6.96

**General Accident Insurance**

# ENDORSEMENT

Not Valid Unless Signed By A Duly Authorized Representative Of The Company

Endorsement number  4

Issued by:  General Accident Insuranc Company of America

| | |
|---|---|
| Place of issue | Date of issue |
| Mount Laurel,NJ | 9-20-99 |

Endorsement effective (standard time) Month      Day      Year      Amending policy no.

Hour_____M._____|  4      |  20      |  99      |  CUB 0167862-00

Issued to

Wellington Homes, LLC

State code      Agent code      Agent name

37      | 427867      | J.A. Montgomery Insurance

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten entry below.

In consideration of an additional premium of $2,733, it is agreed that the policy
is amended as follows:

      1.  Item#3 is amended to read:

**Item 3- Limits of insurance and S.I.R.**

| | | | |
|---|---|---|---|
| General aggregate limit (other than products-completed operations or Automobile Hazard) | $ 10,000,000 | Each occurrence limit | $ 10,000,000 |
| Products-completed operations aggregate limit | $ 10,000,000 | Self Insured Retention | $ 0 |

P/R .523

| Additional premium | Return premium |
|---|---|
| $ 2,733.00 | $ |

Signature of authorized representative

G-1881 Rev.6.96

# CGU      ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Endorsement number ___5___

Issued by: **General Accident Insurance Company of America**

| Place of issue | Date of issue |
|---|---|
| **Mt. Laurel, NJ** | **12-4-99/sb** |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| Hour | **9** | **17** | **99** | **CUB 0167862-00** |

Issued to
**Wellington Homes, LLC**

| State code | Agent code | Agent name |
|---|---|---|
| **37** | **427857** | **J A Montgomery Insurance** |

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten entry below.

**It is hereby understood and agreed that the Named Insured is amended to include:**

    **Vietri, Capano**
    **Vietri, Albert A.**
    **Vietri, Tina Marie**
    **Vietri, Tony**
    **Vietri, Joseph L. II**
    **Vietri, Joseph L.**

Additional premium     Return premium
$ _____    $ _____
Signature of authorized representative

G-1881 Rev.6.96 (1)



# CGU    ENDORSEMENT

**Not Valid Unless Signed By A Duly Authorized Representative Of The Company**

Endorsement number _____ **6**

| Issued by: | General Accident Ins. |
|---|---|

| Place of issue | Date of issue |
|---|---|
| Mt.Laurel,NJ | 1-4-2000 fc |

| Endorsement effective (standard time) | Month | Day | Year | Amending policy no. |
|---|---|---|---|---|
| Hour | 9 | 17 | 99 | CUB 0167862-00 |

Issued to

Wellington Homes,LLC.

| State code | Agent code | Agent name |
|---|---|---|
| 37 | 807498 | J.A.Montgomery    (Commerce Nat'l) |

The above information is not required when this endorsement is issued with the policy.

This endorsement is subject to all the agreements, conditions, and exclusions of the policy. The policy is amended as indicated by typewritten entry below.

It is hereby understood & agreed that the policy is amended as follows:

The Named Insured is amended to read:

Vietri,Albert A.
Vietri,Tina Marie
Vietri,Tony
Capano,Joseph L.II
Capano,Joseph L.

| Additional premium | Return premium |
|---|---|
| $ | $ |

Signature of authorized representative

G-1881 Rev.6.96 (1)